[No. C048298. Third Dist. July 26, 2005.]

RIO LINDA UNION SCHOOL DISTRICT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and JANELLE
SCHEFTNER, Respondents.

518

## COUNSEL

Mullen & Filippi, Barbara L. Turner and Richard J. Berryhill for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, Richard Brophy and Gerald M. Kennedy for California Workers' Compensation Defense Attorneys' Association as Amicus Curiae on behalf of Petitioner.

Finnegan, Marks, Hampton & Theofel and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Law Office of Iris S. Newton, Iris S. Newton; Rucka, O'Boyle, Lombardo & McKenna and Cosimo Aiello for Respondent Janelle Scheftner.

Remcho, Johansen & Purcell, James C. Harrison, Margaret R. Prinzing and Karen Getman for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Janelle Scheftner.

**OPINION**

**CANTIL-SAKAUYE, J.**—On April 19, 2004, Governor Schwarzenegger signed into law Senate Bill No. 899 (2003–2004 Reg. Sess.), a package of reforms to the workers' compensation laws.[1] (Stats. 2004, ch. 34.) (Bill No. 899.) The legislation took effect immediately as urgency legislation. (Stats. 2004, ch. 34, § 49.) Bill No. 899 changed, among other things, the law with regard to apportionment of permanent disability. (Stats. 2004, ch. 34, §§ 33 [repealed Lab. Code, § 4663 (former § 4663)], 34 [added new Lab. Code, § 4663 (§ 4663)], 35 [added Lab. Code, § 4664 (§ 4664)], 37 [repealed Lab. Code, § 4750], 38 [repealed Lab. Code, § 4750.5].)

■ In this case we consider whether the new laws enacted by Bill No. 899 requiring apportionment based on causation (§§ 4663, 4664) apply to a workers' compensation case submitted to a workers' compensation judge (WCJ) for decision prior to the April 19, 2004 effective date of Bill No. 899, but on which an award and findings were not issued until April 23, 2004, four days after the effective date of Bill No. 899. We conclude the new laws, sections 4663 and 4664, should have been applied and annul the decision of the Workers' Compensation Appeals Board (WCAB) finding to the contrary. We need not reach the other issues raised. We shall remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2002, Janelle Scheftner, a third grade teacher at Rio Linda Union Elementary School, slipped on a piece of food as she was walking out of her classroom. She stumbled and fell forward, hitting her shoulder and lower back on a desk or table.

Scheftner had some history of back problems prior to this injury. She had a back strain in 1997, which had resolved by the time she was hired by the school in 2001. She experienced soreness again in December 2001 and sought medical and chiropractic treatment in January 2002. At the end of January Scheftner said the constant pain in her lower left side of her back affected her sleep, work and daily activities. She reported the problem was worsening. Scheftner estimated her pain to be a "7" on a scale of 0 to 10 with 10 being unbearable pain. She had chiropractic treatments on February 1, February 4, February 6, and February 11, 2002, the day before her school injury. On February 13, 2002, the day after her school injury, Scheftner told her chiropractor her pain was down to a level 5 or 6 and her problem was improving.

---

[1] Undesignated statutory references are to the Labor Code.

On February 21, 2002, Scheftner went to see her Kaiser physician regarding her school injury. She received medical treatment for the next several months. By June of 2002, Scheftner's shoulder was back to normal.

In October 2002 Scheftner changed treating physicians. Scheftner continued physical therapy and by December of 2002, Scheftner described her pain severity as being a 4 to 6 on a scale of 10.

By February 2003 Scheftner's physician considered her to be permanent and stationary. It was Dr. Downs's opinion that further medical care on an industrial basis was not appropriate. He attributed all of Scheftner's residual disability to her preexisting health status. With regard to the February 12 school injury, he stated she should be considered discharged as being back to her previous baseline status.

At the request of her attorney, Scheftner was evaluated by another physician who concluded her injury was work related from the specific injury of February 12, 2002. Dr. Nijjar found Scheftner's condition permanent and stationary, noted subjective and objective factors of disability and work exclusions, and found no apportionment.

A mandatory settlement conference was held on Scheftner's workers' compensation claim on November 13, 2003. The case was set for trial on December 11, 2003. On December 11, 2003, the parties agreed to further discovery consisting of a further report following examination by Dr. Downs and a further report following additional record review by Dr. Nijjar. The trial was continued to February 18, 2004.

After Dr. Nijjar completed his additional review of records, he reported he found no reason to change his previously expressed opinions.

Dr. Downs conducted an evaluation of Scheftner on December 23, 2003. Dr. Downs opined Scheftner's disability would be present to the same degree absent her reported industrial injury, she acquired no disability secondary to this injury, and 100 percent of her disability was reflective of her underlying health status. There was no need to provide disability or further medical care on an industrial basis.

The case proceeded to trial on February 18, 2004. On March 2, 2004, the WCJ served on the parties minutes of the hearing and a summary of evidence. Under the heading of "DISPOSITION" it was noted: "This matter may be referred to the Disability Evaluation Unit. . . . If it is not referred to the Disability Evaluation Unit, then it will be submitted as of today [March 2, 2004]." The case was not referred to the Disability Evaluation Unit.

Bill No. 899 became effective on April 19, 2004.

On April 23, 2004, the WCJ issued findings and an award. The WCJ found Scheftner had sustained a work-related injury on February 12, 2002, the injury caused permanent partial disability after adjustment for age and occupation of 34 percent, and she needed further medical treatment. An award of permanent partial disability, attorney fees, and further medical treatment was entered in favor of Scheftner and against the Rio Linda Union School District (District). The opinion of the WCJ, which accompanied the findings and award, stated reliance on Dr. Nijjar's opinion was more in line with the overall statutory workers' compensation scheme since Dr. Downs's opinion was not in keeping with the law holding the employer responsible for all disability that is "lit up" by an industrial injury.

The District filed a petition for reconsideration. One of the arguments put forward by the District was the application of section 4663, as added by Bill No. 899, to this case. The District contended Dr. Nijjar's report did not comply with the applicable new requirements for apportionment based on causation whereas Dr. Downs's report did.

The WCJ submitted a report and recommendation on the District's petition for reconsideration. The WCJ concluded new section 4663 was not applicable to this case, which had been tried and "decided" or at least submitted, before the effective date of Bill No. 899.

The WCAB granted reconsideration. Because of the important legal issue presented as to the application of Bill No. 899 and in order to secure uniformity of decision in the future, the case was assigned to the WCAB as a whole for an en banc decision to be binding precedent on all appeals board panels and WCJ's. (Cal. Code Regs., tit. 8, § 10341; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1425, fn. 6 [118 Cal.Rptr.2d 105].)

A majority of the commissioners of the WCAB (four to two) held "that submission orders and orders closing discovery, that issued prior to the enactment of Bill No. 899 on April 19, 2004, are 'existing' orders that cannot be reopened due to the prohibition set forth in Section 47 [of Bill No. 899]." The majority also held "absent existing orders as so defined the amendments, additions, or repeals of Bill No. 899 apply prospectively on or after April 19, 2004, to all cases, regardless of the date of injury, unless otherwise specified in Bill No. 899."

Commissioner Brass concurred and dissented. He agreed with the majority that Bill No. 899 must be applied to all cases after April 19, 2004, regardless of the date of injury unless there is an existing order, decision, or award, but disagreed that procedural orders, such as orders closing discovery or of submission, could qualify as such existing orders. He concluded only *final* orders, decisions, or awards were exempt from the new law.

Commissioner Cuneo dissented. He contended the majority was "delaying and preventing application of Bill No. 899 directly contrary to legislative intent." He concluded Bill No. 899 should be applied immediately to all pending cases. He suggested the only exception would be for cases in which there was a prior existing order, decision or award, that affected substantive rights of the parties and with regard to which a party had exhausted all of its appellate rights or had chosen not to proceed with those appellate rights.

We granted the District's petition for a writ of review.

## DISCUSSION

### A. Contentions Asserted by Parties and Amicus Curiae

Petitioner District contends on review the WCAB was incorrect in holding the apportionment provisions of Bill No. 899 do not apply to pending cases where there has been an order of submission or an order closing discovery.[2] District claims the Legislature intended the new apportionment laws to take immediate effect on April 19, 2004, the effective date of Bill No. 899, and to apply to all pending cases except those in which there is an existing order, decision or award of the WCAB that affects substantive rights of the parties and that is not subject to further appeal rights, i.e., cases that have been concluded subject to the continuing jurisdiction of the WCAB under sections 5803 and 5804. According to the District, this application of the new apportionment laws is consistent with the rule that workers' compensation benefits are a statutory right and do not vest until a final award is entered.

Scheftner contends the WCAB correctly ruled Bill No. 899 is inapplicable to her case because discovery had been mainly closed and the issues submitted for decision prior to the effective date of Bill No. 899.

Amicus curiae California Workers' Compensation Defense Attorneys' Association and California Workers' Compensation Institute (CWCI) support District's interpretation of the applicability of the new apportion- ment laws. They contend such interpretation best fits the Legislature's

---

[2] District also disputes there were such orders in this case.

interest in addressing the workers' compensation system crisis by reducing costs in the key area of apportionment. CWCI claims such an interpretation is actually a "prospective" application of Bill No. 899.

Amicus curiae California Applicants' Attorneys Association (CAAA) makes numerous arguments, including that the standard presumption against retroactivity should apply, particularly as the Legislature in section 47 of Bill No. 899 stated Bill No. 899 should be applied "prospectively."[3] CAAA contrasts the clearly retroactive intent expressed in section 46 of Bill No. 899 regarding the repeal of the personal physician's or chiropractor's presumption of correctness with the language of intent in section 47 of Bill No. 899 to argue something different from retroactive application was intended by section 47. CAAA argues the WCAB's interpretation gives meaning to every part of section 47 by making the new apportionment provisions apply to those cases in which workers were injured prior to April 19, 2004, but had not received an order, decision or award applying the law of apportionment by that date. According to CAAA, the WCAB's interpretation is consistent with the plain language of section 47, the past interpretations of the Labor Code and the realities of workers' compensation practice. It implements the intent of Bill No. 899 to achieve economic savings by expediting cases and cutting down on litigation costs. CAAA asserts alternate interpretations may render the application of Bill No. 899 unconstitutional. CAAA denies Bill No. 899 abolished statutory rights, contending instead the Legislature only amended an existing statute and added a new one.

## B. Analysis of Bill No. 899

The rule under the law prior to Bill No. 899 was "an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under [former section 4663] 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the preexisting disease. [Citations.]" (*Ballard v. Workmen's Comp. Appeals Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].) That is, the WCAB was required to "allow compensation not only for the disability resulting solely from the employment, but also for that which results from the acceleration, aggravation, or 'lighting up' of a prior nondisabling disease." (*Pullman Kellogg v. Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 454 [161 Cal.Rptr. 783, 605 P.2d

---

[3] CAAA's for judicial notice filed March 1, 2005, is denied.

422].) Apportionment was allowed in limited situations, but could not be based on the cause of the disease; "pathology" could not be apportioned. (*Ibid.*; *Franklin v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 235 [145 Cal.Rptr. 22]; former § 4663.)

■ Bill No. 899 repealed former section 4663. Bill No. 899 added a new section 4663 and section 4664 affirmatively requiring, among other things, apportionment of permanent disability based on causation and limiting the employer's liability under certain circumstances. (Stats. 2004, ch. 34, §§ 33 [repealed § 4663], 34 [added new § 4663], 35 [added § 4664].)

Whether the new apportionment requirements apply to pending cases in the workers' compensation system and if so, to which pending cases, have divided the parties before us, the commissioners of the WCAB, and the various amicus curiae.[4] In large part the disagreements, a number of which have been outlined above, focus on the language of an uncodified portion of Bill No. 899, section 47.[5]

In section 47, the Legislature stated: "The amendment, addition, or repeal of, any provision of law made by this act shall apply *prospectively* from the date of enactment of this act, *regardless of the date of injury*, unless otherwise specified, *but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board.*" (Stats. 2004, ch. 34, § 47, italics added; hereafter Stats. section 47.)

■ "The principles which guide our analysis are well settled. 'Although the WCAB's findings on questions of fact are conclusive (§ 5953), the construction of a statute and its applicability to a given situation are matters of law that are reviewable by the courts.' (*Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470–1471 [62 Cal.Rptr.2d 393].)

---

[4] The Second District Court of Appeal, Division Seven, has concluded in *Kleemann v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 274 [25 Cal.Rptr.3d 448], that the new apportionment requirements do apply to cases such as Kleeman's pending on the date of enactment of Bill No. 899. (See also, *Green v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 1426, 1432, 1439–1440 [26 Cal.Rptr.3d 527].)

The Fifth District has recently reached a similar conclusion in an opinion that is not yet final. (*Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906.)

[5] Section 47 is a "plus section" of Bill No. 899. "A 'plus section' is a provision of a bill that is not intended to be a substantive part of the code section or general law that the bill enacts, but to express the Legislature's view on some aspect of the operation or effect of the bill. Common examples of 'plus sections' include severability clauses, saving clauses, statements of the fiscal consequences of the legislation, provisions giving the legislation immediate effect or a delayed operative date or a limited duration, and provisions declaring an intent to overrule a specific judicial decision or an intent not to change existing law." (*People v. Allen* (1999) 21 Cal.4th 846, 858, fn. 13 [89 Cal.Rptr.2d 279, 984 P.2d 486].)

'The [WCAB's] administrative construction of statutes that it is charged to enforce and interpret is entitled to great weight unless it is clearly erroneous. [Citation.]' (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].) 'An erroneous interpretation or application of law by the WCAB is a ground for annulment of [its] decision. [Citations.]' [Citations.]" (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1180 [8 Cal.Rptr.3d 467].) That is, "although the Board's interpretation of a Labor Code statute is entitled to respect, if it is wrong, it is wrong, and we are not bound by it." (*Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1435, 1442 [5 Cal.Rptr.3d 822].)

We believe the question of the appropriate application of the new apportionment requirements is answered by a consideration of the nature of the workers' compensation system, the nature of the Legislature's action regarding apportionment in Bill No. 899, and the language of Stats. section 47.

■ The nature of the workers' compensation system was well described in *Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997 [229 Cal.Rptr. 494] (*Graczyk*). "California workers' compensation law (§ 3200 et seq.) is a statutory system enacted pursuant to constitutional grant of plenary power to the Legislature to establish a complete and exclusive system of workers' compensation. [Citations.] It is 'an expression of the police power' (§ 3201) and has been upheld as a valid exercise of the police power. [Citations.] [¶] The right to workers' compensation benefits is 'wholly statutory' [citations], and is not derived from common law. [Citations.] [¶] This statutory right is exclusive of all other statutory and common law remedies, and substitutes a new system of rights and obligations for the common law rules governing liability of employers for injuries to their employees. [Citations.] Rights, remedies and obligations rest on the status of the employer-employee relationship, rather than on contract or tort. [Citations.]" (*Graczyk, supra*, at pp. 1002–1003; see *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; see *Northstar at Tahoe v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1481, 1484 [50 Cal.Rptr.2d 475].)

Given the complete statutory nature of the workers' compensation system, it is apparent the specific right to compensation under such system for any industrial injury resulting in permanent disability because of "the acceleration, aggravation, or 'lighting up' of a prior nondisabling disease" (*Pullman Kellogg v. Workers' Comp. Appeals Bd., supra*, 26 Cal.3d at p. 454; former § 4663) was a purely statutory right. Bill No. 899 did not purport to "amend" this right. Bill No. 899 "repealed" former section 4663. (Stats. 2004, ch. 34, § 33.) In its place, the Legislature substituted a new statutory right to

compensation for the percentage of permanent disability directly caused by an industrial injury. (§§ 4663, 4664.)

■ "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Casualty & Surety Co. v. Industrial Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; see *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) "A statute has retrospective effect when it substantially changes the legal consequences of past events. [Citation.]" (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) The theory against retroactive application of a statute is that the parties affected have no notice of the new law affecting past conduct. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 793 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

■ However, the repeal of a statutory right or remedy triggers the application of rules distinct from the traditional law regarding the prospective or retroactive application of a statute. "A well-established line of authority holds: ' " 'The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered.' " [Citations.]' [Citations.]" (*Physicians Com. for Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal.App.4th 120, 125–126 [13 Cal.Rptr.3d 926], italics omitted; see *Younger v. Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; see *Governing Board v. Mann* (1977) 18 Cal.3d 819, 831 [135 Cal.Rptr. 526, 558 P.2d 1]; see *Callet v. Alioto* (1930) 210 Cal. 65, 67 [290 P. 438].) "The justification for this rule is that all statutory remedies are pursued with full realization that the [L]egislature may abolish the right to recover at any time." (*Callet v. Alioto, supra,* at pp. 67–68.)

■ This rule is applicable here since the Legislature by Bill No. 899 repealed the purely statutory right to workers' compensation for any industrial injury resulting in permanent disability because of the aggravation of a prior nondisabling disease as may reasonably be attributed to the injury. The repeal of such statutory right applies to *all* pending cases, at whatever stage the repeal finds them, unless the Legislature has expressed a contrary intent by an express saving clause or by implication from contemporaneous legislation. (*Younger v. Superior Court, supra,* 21 Cal.3d at p. 110.)

In the uncodified portion of Bill No. 899, section 47, the Legislature did express its intent to save a limited number of pending cases from the ordinary effect of repeal. Stats. section 47 states: "The . . . repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act,[6] regardless of the date of injury, unless otherwise specified,[7] but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board."

The language "regardless of the date of injury" clearly reflects the understanding and intent of the Legislature that Bill No. 899 would be applicable to pending workers' compensation cases and not just to new compensable injuries occurring after April 19, 2004, the effective date of Bill No. 899. Indeed, this immediate effect of the new law is the usual result, as we have explained, when a prior statutory right is repealed. However, the Legislature goes on to exclude some pending cases from the effect of the new law, by stating Bill No. 899 "shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award." (Stats. § 47.) This language essentially tracks the continuing jurisdiction language of sections 5803[8] (section 5803) and 5804 (section 5804).[9]

█ Under sections 5803 and 5804, the WCAB has continuing jurisdiction over all of its orders, decisions, and awards for a period of five years from the date of injury. During this period of time, the WCAB "may rescind, alter or amend any order, decision, or award, good cause appearing therefor."

---

[6] Bill No. 899 became effective on April 19, 2004, as urgency legislation. Section 49 of Bill No. 899 states the facts constituting the necessity for making the legislation an urgency statute as follows: "In order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time, it is necessary for this act to take effect immediately." (Stats. 2004, ch. 34, § 49.)

[7] There is no otherwise specified date of applicability for the new apportionment laws.

[8] Section 5803 provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division, and the decisions and orders of the rehabilitation unit established under Section 139.5. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor.

"This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."

[9] Section 5804 provides: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition. Provided, however, that after an award has been made finding that there was employment and the time to petition for a rehearing or reconsideration or review has expired or such petition if made has been determined, the appeals board upon a petition to reopen shall not have the power to find that there was no employment."

(§ 5803.) This authority is also referred to as the continuing jurisdiction of the board to "reopen" an award or other decision. (See, e.g., 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 428, p. 978 [continuing jurisdiction of WCAB, reopening case for good cause]; Herlick, Cal. Workers' Compensation Law (6th ed. 2003) Notice, Statute of Limitations, and Continuing Jurisdiction, § 14.08 p. 14-33 [good cause to reopen]; O'Brien & O'Brien, Cal. Workers' Compensation Claims & Benefits (10th ed. 2000) § 30, p. 707 [petition to reopen subsequent to findings and award].) Such continuing jurisdiction to reopen a case is different from the WCAB's reconsideration of a "final" order of the WCAB or a WCJ pursuant to section 5900.[10] (*Argonaut Ins. Co. v. Workmen's Compensation Appeals Bd.* (1967) 247 Cal.App.2d 669, 673 [55 Cal.Rptr. 810]; *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1074–1075 [97 Cal.Rptr.2d 418] [defines "final" orders subject to reconsideration].) Among other things, reconsideration under section 5900 is not conditioned upon a showing of good cause; reopening is. (*Argonaut Ins. Exchange v. Industrial Acc. Com.* (1958) 49 Cal.2d 706, 711 [321 P.2d 460].)

■ "[T]he Legislature is deemed to be aware of existing law." (*American Financial Services Ass'n v. City of Oakland* (2005) 34 Cal.4th 1239, 1261 [23 Cal.Rptr.3d 453, 104 P.3d 813].) ■ A substantive change in the applicable law has been held to be "good cause" for reopening a workers' compensation case under section 5803. (*Knowles v. Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030, 1033 [89 Cal.Rptr. 356].) And so we can presume the Legislature in using the entire phrase "shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board" was intentionally referring to the continuing jurisdiction authority of the WCAB under sections 5803 and 5804. The majority decision of the WCAB fails to recognize this. Instead the majority decision incorrectly focuses on the Legislature's choice of the word "existing" in Statutes section 47 to conclude significant interlocutory orders, including orders of submission and orders closing discovery cannot be "reopened" by Bill No. 899. Such orders are not, however, the type of orders, decisions or awards to which the entire phrase in Statutes section 47 refers. The language chosen by the Legislature, read as a complete phrase, indicates the Legislature did not want the changes of law made by Bill No. 899

---

[10] Section 5900 provides: "(a) Any person aggrieved directly or indirectly by any final order, decision, or award made and filed by the appeals board or a workers' compensation judge under any provision contained in this division, may petition the appeals board for reconsideration in respect to any matters determined or covered by the final order, decision, or award, and specified in the petition for reconsideration. The petition shall be made only within the time and in the manner specified in this chapter.

"(b) At any time within 60 days after the filing of an order, decision, or award made by a workers' compensation judge and the accompanying report, the appeals board may, on its own motion, grant reconsideration."

to be the basis for reopening cases otherwise concluded under the workers' compensation procedures for decision (§ 5313), reconsideration (§ 5900), and judicial review (§ 5950).

 Thus, we hold the repeal of former section 4663 was effective immediately on enactment of Bill No. 899 on April 19, 2004, and new section 4663 and section 4664 are applicable to any case still pending, except those cases that are finally concluded subject only to the WCAB's continuing jurisdiction under sections 5803 and 5804.

The Legislature's use of the word "prospectively" in Stats. section 47 does not change this conclusion. In context with the other language of the section,[11] it appears the Legislature was only trying to clarify and or emphasize that the changes of law contained in Bill No. 899 would apply to pending cases from the date of enactment forward.

Amicus CAAA argues against the conclusion we have reached, contending the word "prospectively" in Stats. section 47 must at least mean something different than the clearly retroactive intent expressed in section 46 of Bill No. 899 regarding the repeal of the personal physician's or chiropractor's presumption of correctness. (Stats. 2004, ch. 34, § 46 (Stats. section 46).) Stats. section 46 provides: "The repeal of the personal physician's or chiropractor's presumption of correctness . . . shall *apply to all cases, regardless of the date of injury,* but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board." (Italics added.)

The application of Stats. section 46 is not before us, but we can discern a possible purpose for the Legislature to use different language in Stats. section 46 from that used in Stats. section 47. Consider the hypothetical situation of a workers' compensation case that has been concluded subject only to the continuing jurisdiction of the WCAB. Both Stats. sections 46 and 47 make it clear the Legislature does not intend the provisions of Bill No. 899 to be used as the basis for reopening such a case. However, if the case is properly reopened for other "good cause," the Legislature may have intended from its

---

[11] "A reviewing court's 'first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance . . . to every word, phrase and sentence in pursuance of the legislative purpose.' (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)" (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd., supra,* 114 Cal.App.4th at p. 1180.)

use of the phrase "shall apply to all cases" in Stats. section 46 that the repeal of the physician's or chiropractor's presumption of correctness apply to the reopened case. However, it may not intend in such situation to backtrack and require reassessment of causation of the permanent disability to apply the new apportionment law. The new apportionment law applies only "prospectively," i.e., from April 19, 2004 forward, to cases which were not concluded as of April 19, 2004. Whether this suggestion is correct or not, we at least do not find the difference in language between Stats. sections 46 and 47 precludes our conclusion regarding the cases to which the new apportionment law applies.

■■■ CAAA asserts alternate interpretations from that provided by the WCAB's decision may render the application of Bill No. 899 unconstitutional because article XIV, section 4 of the California Constitution guarantees that injured workers will be adequately compensated for their injuries, and requires that the workers' compensation system "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character. . . ." We are not prepared to say the change in apportionment law denies workers "adequate" compensation or fails to "accomplish substantial justice" when the new law still requires the employer to pay compensation "for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." (§ 4664, subd. (a).) The California Constitution does not make a worker's right to benefits absolute. (*Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.,* *supra,* 112 Cal.App.4th at pp. 1442–1443.)

Nor are we allowed to second-guess the apparent policy decision of the Legislature, in addressing the workers' compensation crisis (Stats. 2004, ch. 34, § 49), that it was necessary to change the apportionment law and that the cost savings of immediately applying the new apportionment law to most pending cases offsets the concomitant cost burden and delay in those cases. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788] ["It is for the Legislature, not the courts, to pass upon the social wisdom of such an enactment"].)

We conclude the WCAB was incorrect in holding the apportionment provisions of Bill No. 899 did not apply to this case. We shall annul the WCAB decision and remand for further proceedings consistent with this opinion. (§ 5953.) We do not reach the other issues raised by District in its petition for writ of review.

## DISPOSITION

The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion. Costs are awarded to petitioner. (Cal. Rules of Court, rule 27(a).)

Davis, Acting P. J., and Butz, J., concurred.

The petition of respondent Janelle Scheftner for review by the Supreme Court was denied October 12, 2005.