[No. E038699. Fourth Dist., Div. Two. Nov. 28, 2006.]

E.L. YEAGER CONSTRUCTION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and DENNIS
GATTEN, Respondents.

924

COUNSEL

Stockwell, Harris, Widom, Woolverton & Muehl and Anne C. Bobchick for Petitioner.

Finnegan, Marks, Hampton & Theofel and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

Rucka, O'Boyle, Lombardo & McKenna, Cosimo Aiello; Hinden, Rondeau & Brevlavsky and Charles R. Rondeau for Respondent Dennis Gatten.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

OPINION

**HOLLENHORST, Acting P. J.**—E.L. Yeager Construction and its workers' compensation insurer (collectively referred to as petitioner) petition for a writ of review to determine the lawfulness of an award and an order denying reconsideration in a proceeding before the Workers' Compensation Appeals Board (Board). Petitioner contends that the Board erred by not correctly applying the newly enacted apportionment statutes and in rejecting the independent medical examiner's (IME) opinion on apportionment. We agree and, accordingly, annul the order.

## Factual and Procedural Background

Applicant sustained an admitted injury to his lower back in 1996 while working for petitioner. The injury occurred when he fell from a five-and-one-half-foot wall, landing on his buttocks. At the time of the injury, he was diagnosed with a lumbar strain/sprain with a compression facture at L2.

Prior to this injury, applicant had occasional back pain and had received two to three chiropractic adjustments for the pain in the preceding 10-year period.

Following his injury, applicant saw various physicians and eventually the workers' compensation administrative law judge (WCJ) appointed Dr. Akmakjian as the IME.

Dr. Akmakjian apportioned 20 percent of applicant's present disability to chronic degenerative disease of his lumbar spine. He testified that applicant's magnetic resonance imaging (MRI) taken in 1997 showed dehydration, indicating early degenerative change at almost every disc in his back. The doctor explained that this is a "wear-and-tear phenomenon" where the fine structure of the disc begins to change and wear out, loses its blood supply, and slowly starts to degenerate. He noted that this is a naturally occurring process that everyone experiences, but it bothers some people and others it does not.

Although Dr. Akmakjian could not tell when this process started, he opined that the MRI taken within a year of the injury date showed the degenerative changes had already begun. "If you go back to your MRI from 1997, it says you have disc dehydration, indicating early degenerative change at almost every disc in your back, and that was within a year of your injury date, so, you know, all that stuff was there, it's bottom line. The arthritic changes, beginning degeneration, it was there."

When he was asked if he could find it, "medically probable that [applicant] had some back problems that you can apportion to prior to his injury of 1996," Dr. Akmakjian replied, "That, plus the MRI findings, yes."

The WCJ found applicant's industrial back injury caused a 74 percent permanent disability with no basis for apportionment. The WCJ rejected Dr. Akmakjian's opinion regarding apportionment as not supported by substantial evidence. Petitioner now seeks review of this finding of no apportionment.

**Discussion**

In 2004, the Legislature made a diametrical change in the law with respect to apportionment to an employee's preexisting injury by enacting Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899). Prior to its repeal by this bill, apportionment under Labor Code former section 4663[1,2] was limited to circumstances where the apportioned disability was the result of the natural progression of a preexisting, nonindustrial condition and such nonindustrial disability would have occurred in the absence of the industrial injury. Apportionment based on causation was prohibited. Thus, "[p]rior to 2004, apportionment could never be made on the basis of pathology, either in a case of preexisting disability or in a case of an aggravation of an existing condition; it had to be made on the basis of causation of permanent disability. Many times the reporting physician might find preexisting pathology, such as old x-rays showing asymptomatic spinal changes or heart disease that could not have happened overnight, but these were insufficient, absent actual disability, for apportionment." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2006) Apportionment-Specific Applications, § 8.06, p. 8-36.1, fns. omitted.)

"The rule under the law prior to [Senate Bill] 899 was 'an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under [former section 4663] "only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the 'normal progress'" of the preexisting disease. [Citations.]' [Citation.] That is, the [Board] was required to 'allow compensation not only for the disability resulting solely from the employment, but also for that which results from the acceleration, aggravation, or "lighting up" of a prior nondisabling disease.' [Citation.] Apportionment was allowed in limited situations, but could not be based on the cause of the disease; 'pathology' could not be apportioned. [Citations.]" (*Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 525–526 [31 Cal.Rptr.3d 789] (*Rio Linda*).)

---

[1] All further statutory references will be to the Labor Code unless otherwise indicated.

[2] Former section 4663, repealed effective April 19, 2004, by Statutes 2004, chapter 34, section 33, provided as follows: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

"[Senate Bill] 899 repealed former section 4663. [Senate Bill] 899 added a new section 4663[3] and section 4664[4] affirmatively requiring, among other things, apportionment of permanent disability based on causation and limiting the employer's liability under certain circumstances. [Citation.]" (*Rio Linda, supra,* 131 Cal.App.4th at p. 526.) The new section 4663 also requires that a reporting physician address the apportionment issue in a specific manner.

Senate Bill 899 became effective April 19, 2004, and applies to all cases that were not yet final at the time of its effective date. (*Rio Linda, supra,* 131 Cal.App.4th at p. 523; *Kleemann v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 274 [25 Cal.Rptr.3d 448].)

The WCJ and the Board, in its answer to this petition, acknowledge that the new law governing apportionment applies to this case, and that, consequently, apportionment may be based on pathology and asymptomatic prior conditions. The Board asserts, however, that petitioner has not carried its burden of proof in establishing the percentage of disability caused by nonindustrial factors. More specifically, it contends that Dr. Akmakjian's opinion attributing 20 percent of applicant's disability to nonindustrial factors does not constitute substantial evidence on this issue.

■ It is certain the mere fact that a report addresses the issue of causation of the permanent disability, and makes an apportionment determination by finding the approximate relative percentages of industrial and nonindustrial

---

[3] Section 4663 now reads: "(a) Apportionment of permanent disability shall be based on causation. [¶] (b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability. [¶] (c) In order for a physician's report to be considered complete on the issue of permanent disability, it must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries. If the physician is unable to include an apportionment determination in his or her report, the physician shall state the specific reasons why the physician could not make a determination of the effect of that prior condition on the permanent disability arising from the injury. The physician shall then consult with other physicians or refer the employee to another physician from whom the employee is authorized to seek treatment or evaluation in accordance with this division in order to make the final determination. [¶] (d) An employee who claims an industrial injury shall, upon request, disclose all previous permanent disabilities or physical impairments."

[4] Section 4664 now provides in part: "(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment."

causation does not necessarily render the report one upon which the Board may rely. This is because it is well established that any decision of the Board must be supported by substantial evidence. (§ 5952, subd. (d); *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

In order to constitute substantial evidence, a medical opinion must be predicated on reasonable medical probability. (*McAllister v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 413, 416–417, 419 [71 Cal.Rptr. 697, 445 P.2d 313].) Also, a medical opinion is not substantial evidence if it is based on facts no longer germane, on inadequate medical histories or examinations, on incorrect legal theories, or on surmise, speculation, conjecture, or guess. (*Hegglin v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967].) Further, a medical report is not substantial evidence unless it sets forth the reasoning behind the physician's opinion, not merely his or her conclusions. (*Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 407 [71 Cal.Rptr. 678, 445 P.2d 294].)

The medical opinion must disclose familiarity with the concepts of apportionment, describe in detail the exact nature of the apportionable disability, and set forth the basis for the opinion, so that the Board can determine whether the physician is properly apportioning under correct legal principles.

The Board has taken the position "to be substantial evidence on the issue of the approximate percentages of permanent disability due to the direct results of the injury and the approximate percentage of permanent disability due to other factors, a medical opinion must be framed in terms of reasonable medical probability, it must not be speculative, it must be based on pertinent facts and on an adequate examination and history, and it must set forth reasoning in support of its conclusions. [¶] For example, if a physician opines that approximately 50% of an employee's back disability is directly caused by the industrial injury, the physician must explain how and why the disability is causally related to the industrial injury (e.g., the industrial injury resulted in surgery which caused vulnerability that necessitates certain restrictions) and how and why the injury is responsible for approximately 50% of the disability. And, if a physician opines that 50% of an employee's back disability is caused by degenerative disc disease, the physician must explain the nature of the degenerative disc disease, how and why it is causing permanent disability at the time of the evaluation, and how and why it is responsible for approximately 50% of the disability." (*Escobedo v. Marshalls* (2005) 70 Cal.Comp.Cases 604, 621, fn. omitted.)

In *Escobedo*, the Board concluded that substantial evidence supported a doctor's apportionment of 50 percent to the work injury and 50 percent to applicant's arthritis because (1) the doctor based his opinion on the "trivial nature" of the applicant's left knee injury; (2) because of the almost immediate onset of right knee symptoms after that injury; and (3) because of the "obvious, significant degenerative arthritis in both knees" reflected in a presurgical MRI of the applicant's left knee taken shortly after the injury and reflected in postsurgical X-rays. In addition, the doctor had expressed his apportionment opinion in terms of reasonable medical probability.

Here, Dr. Akmakjian based his opinion of apportionment on the MRI, which clearly showed degenerative disc disease at almost every level of his lower spine and the fact that applicant was occasionally having minor back problems prior to the injury. Although the doctor does not state in his report that the apportionment is based on reasonable medical probability, he does do so in the deposition. This constitutes a sufficient basis for the apportionment.

The WCJ criticized the doctor's opinion, pointing out "[a]lthough a 'history of chronic degenerative disease' is cited by Dr. Akmakjian he acknowledged that the condition had not resulted in a period of disability or evidence of any modified work performance and had only been involved with limited chiropractic care over the applicant's 30 year working history." But, prior disability or evidence of modified work performance is no longer a prerequisite to apportionment. If the presence of these factors is necessary to constitute substantial evidence, there would have been no purpose in changing the law.

The WCJ also found insufficient support in the testimony for the conclusion the degenerative disease was chronic in terms of ongoing pathology, treatment, or disability. But again, degenerative disease can be asymptomatic and still apportionable under the new law.

The WCJ also refers to two doctors who examined applicant and states neither identified a progressive disease as a factor in disability, but these reports were compiled prior to the change in the law on apportionment. Dr. Akmakjian is the only doctor who addressed apportionment after the law change—besides being the court-appointed IME.

The WCJ also criticizes the apportionment on the ground that it was based on age alone. However, the doctor indicated that the MRI and X-rays showed degenerative disc disease and this condition only gets worse because of age, i.e., wear and tear on the body.

Even though Dr. Akmakjian does make assumptions, his conclusion is based on specific evidence of applicant's condition. In contrast, the Board's rejection of his opinion on apportionment is based on an analysis of the facts that would have been appropriate under the prior law, rather than the current one. While paying lip service to the new standard that apportionment can be warranted if there is a preinjury asymptomatic condition, the doctor's report is criticized in large part because of the absence of significant preinjury medical treatment or disability. It points out, for instance, that applicant suffered from minor episodic back pain prior to his injury, but notes that such pain is not a ratable disability. This is, of course, true, but this fact is not significant under the new law. An asymptomatic prior condition would not involve a ratable disability, so that the fact that applicant here did not have a history of medical treatment or lost time due to his degenerative back condition is not significant under the new apportionment standards and does not serve as a basis to disregard Dr. Akmakjian's opinion. If the Board's analysis were the norm, apportionment under the new standard could rarely, if ever, be found.

Moreover, the Board too readily dismisses the facts upon which Dr. Akmakjian bases his conclusion, characterizing his reliance on applicant's MRI as "questionable" given the latter's insignificant history of back pain. We find nothing questionable about a medical expert's reliance on an accepted diagnostic tool. A medical expert may well view a person's history of minor back problems as being more significant in light of the evidence of substantial degeneration of the back shown by an MRI. Dr. Akmakjian did so here. His conclusion cannot be disregarded as being speculative when it was based on his expertise in evaluating the significance of these facts. This was a matter of scientific medical knowledge and the Board impermissibly substituted its judgment for that of the medical expert.

Finally, the 20 percent figure that Dr. Akmakjian used is based on his subjective evaluation, but we cannot conclude that it is merely a random number that he settled upon. He himself noted that apportionment would have been greater if applicant had had more extensive treatment for his back. On the other hand, the doctor may have given applicant a higher disability rating because he appeared to be in more pain than other patients with similar injuries because of the preexisting pathology. In Dr. Akmakjian's words, applicant just did not have a normal back. The doctor made a determination based on his medical expertise of the approximate percentage of permanent disability caused by degenerative condition of applicant's back. Section 4663, subdivision (c), requires no more.

## Disposition

The order is annulled and the matter is remanded to the Board with directions to order the WCJ to make an award consistent with this opinion.

Richli, J., and Gaut, J., concurred.