[No. B128688. Second Dist., Div. Six. Apr. 26, 2000.]

JANICE SAKOTAS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, MOTEL 6 et al.,
Respondents.

**COUNSEL**

Ghitterman & Ghitterman, Allan S. Ghitterman and Russell R. Ghitterman for Petitioner.

Boehm & Associates and Robert Feinglass as Amici Curiae on behalf of Petitioner.

Rucka, O'Boyle, Lombardo, McKenna, N. Michael Rucka and Patrick O'Shaughnessy for California Applicant's Attorney's Association as Amicus Curiae on behalf of Petitioner.

Grancell, Lebovitz, Stander, Marx & Barnes, Peter R. Nelson, Lawrence Kirk and Norin T. Grancell for Respondents Motel 6, Continental Casualty and Scott Wetzel Services.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

### COFFEE, J.—

#### INTRODUCTION

In this case Janice Sakotas, a desk clerk and sometimes substitute manager for Motel 6, filed a petition for writ of review alleging that the medical-legal report upon which the Workers' Compensation Appeals Board (WCAB) relied in denying workers' compensation benefits for an alleged psychiatric injury was not substantial evidence. In addition, Sakotas contends the Labor Code section applied by the WCAB to bar benefits violates the California Constitution and equal protection under the law. We conclude that the employer's medical-legal report is consistent with the findings of the workers' compensation judge (WCJ) and constitutes substantial evidence. We further hold that Labor Code section 3208.3, subdivision (b)(1),[1] establishing the test of predominance for psychiatric injury claim, is a permissible exercise of power by the Legislature. The petition is denied.

#### FACTS

Janice Sakotas was hired as a desk clerk by Motel 6 in 1993. Three to four times a year Sakotas was the manager on duty (MOD), from one week to one month at a time. Generally, an MOD looks after the property and employees and handles all the usual daily problems.

Sakotas reportedly had no difficulty doing the work until late 1996 when she was under the supervision of a new manager, Andy Polhill. Apparently, Polhill was responsible for other locations as well. Sakotas claimed Polhill was unavailable to help and she had the MOD responsibilities more often. During these periods there were missing reservations and she was regularly contacted at night.

---

[1]All further reference to statute is to the Labor Code.

Although Sakotas was paid more to manage, she told Polhill it was too much for one person. She did the work because she felt responsible and there was no one else. When other employees quit in early 1997, Sakotas filled in, became greatly stressed and symptomatic, sought medical treatment and never returned to work.

Sakotas also had many personal problems. Her father was deceased and had been an alcoholic. Her mother was abusive and they did not get along. Her brother lost his doctor's license because of drugs and alcohol. Her son had been arrested and jailed for various offenses, including drugs and spousal abuse, and was diagnosed a schizophrenic. Her daughter had a child out of wedlock, was abused, attempted suicide and had physical problems.

Sakotas herself had troubled marriages. After her first divorce, her husband's parents gained custody of the children, who had allegedly been mistreated. Her third husband, who had been an alcoholic, died in a boating accident leading to excessive drinking by Sakotas for two years. Sakotas's subsequent boyfriend has been in and out of her life due to drugs. She also had tried drugs, attempted suicide, and filed for bankruptcy.

For evidentiary support of her workers' compensation claim for stress, Sakotas obtained medical-legal reports from Psychiatrist Richard Bell. Dr. Bell described Sakotas's work stress beginning with Polhill's mismanagement and Sakotas's increased workload. In regards to nonindustrial stresses, Dr. Bell reported much of the history of family problems, noting that she was able to cope and continue working.

Dr. Bell also referred to the bankruptcy, but incorrectly stated Sakotas never attempted suicide. Dr. Bell did review the medical-legal reports of the psychologist for Motel 6, Mark Mosk. Both doctors diagnosed adjustment disorder with mixed anxiety and depressed mood. In his reports, however, Dr. Mosk expressed his opinion that the stress at Motel 6 was not responsible for at least 51 percent of Sakotas's psychiatric injury. Dr. Bell disagreed, stating that Sakotas was able to continue working despite her personal problems before Polhill became manager.

Dr. Mosk, on behalf of the employer, recorded a similar but somewhat more detailed history than did Dr. Bell. However, in conclusion, Dr. Mosk stated Sakotas did not sustain any form of industrial injury or disability because she was able to work five months for Polhill until her inability to adjust resulted in resentment and anger. Coupled with Sakotas's problems with her son and daughter, Dr. Mosk opined that as far as her temporary disability, ". . . *80 [percent] of her present disability was the result of the*

*natural progression of her nonindustrial circumstances and condition, and would have existed absent the industrial exposure. Consequently, 20 [percent] of her current emotional disability is industrially caused. Thus, the predominant cause of this psychiatric injury is nonindustrial in nature.*" (Italics in original.)

Dr. Mosk subsequently reviewed Sakotas's deposition and court records. He noted in his report a history of attempted suicide, bankruptcy, her third husband's alcoholism, alienation from her mother, her son's schizophrenia and her daughter's kidney disease. When asked at his deposition the nature of the nonindustrial circumstances mentioned in his report, Dr. Mosk answered it was Sakotas's psychiatric history, the challenges of her son and daughter and difficulties with her boyfriend. Dr. Mosk further stated he was unable to obtain enough information from Sakotas and assumed that, as a parent, stress resulted from Sakotas's family situation, although admitting that some individuals ". . . simply accept the fact that this is the way it's going to be . . . ." In deposition testimony Dr. Mosk agreed that the period with Polhill was the "[last] straw" for Sakotas. He did not change his opinion on predominance, however, noting that she had not informed him of the bankruptcy, attempted suicide, drug use by both her and her boyfriend, and all of her son's many arrests, schizophrenia and violence.

The parties proceeded to trial. Although Sakotas admitted her personal problems, she claimed she had become used to it and her work was unaffected. Sakotas further stated she liked the job, as well as Mr. Polhill, and although the MOD work was not mandatory it was too stressful. Polhill also testified. He indicated Sakotas reluctantly accepted the MOD work, which distressed her from time to time, and on one occasion told the staff not to call her at home. Polhill also felt one person could do the job, and Sakotas was competent enough and a loyal employee.

The WCJ determined Sakotas had sustained an industrial psychiatric injury. However, the WCJ determined the injury was not predominantly caused by employment and thus barred by section 3208.3, subdivision (b)(1). Effective July 16, 1993, subdivision (b)(1) stated, "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury."

The WCJ further found Sakotas's industrial injury was caused by a nondiscriminatory, good faith personnel action and consequently was likewise precluded under section 3208.3, subdivision (h). Subdivision (h), which

was also added as part of the workers' compensation reform legislation effective July 16, 1993, states, "No compensation under this division shall be paid by an employer for a psychiatric injury if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action. The burden of proof shall rest with the party asserting the issue."[2] In the opinion on decision, the WCJ explained that although Sakotas was credible and she honestly believed the problems with her children were not stressful, this was a form of denial and thus the nonindustrial stresses were the predominant cause of her psychiatric injury.

The decision quoted Dr. Mosk's report concerning Sakotas's children and his version of causation. The WCJ rejected Dr. Bell's statement that Sakotas's family problems had not caused her stress to the point of losing time from work. He also noted that Sakotas, declared by him to be credible, testified that she liked her supervisors, which he found "hardly consistent" with Polhill's reported incompetence and malfeasance, leading to Sakotas's increased responsibilities. The WCJ further reasoned that since Sakotas was able to perform the same duties before Polhill became her manager, it was the transfer to the MOD job, or a personnel action, that caused the stress.

In her petition for reconsideration, Sakotas alleged that employment was predominant because she had been able to adjust and work continuously despite her personal problems until the time Polhill took over. She also contended the WCJ should not have relied upon Dr. Mosk, who, in deposition testimony, admitted to assuming perceived stress from family matters regardless of the facts. Instead, she advocated following Dr. Bell's report, which was consistent with the history.

Finally, Sakotas questioned the constitutionality of section 3208.3, subdivisions (b)(1) and (h). She contended the law impermissibly injected conduct, or common law fault, into the no fault system of compensating for industrial injuries, contrary to article XIV, section 4 of the California Constitution.[3] She alleged such conduct-based compensation denies equal

---

[2]Section 3208.3, subdivision (b)(3) defines substantial cause as being at least 35 to 40 percent of the causation from all sources combined.

[3]Article XIV, section 4 of the California Constitution in relevant part states, "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability . . . irrespective of the fault of any party. A complete system of workers' compensation includes adequate

protection under the test enunciated in *Kenneally v. Medical Board* (1994) 27 Cal.App.4th 489 [32 Cal.Rptr.2d 504],[4] because public policy is not served by treating psychiatric injuries due to personnel actions differently. Sakotas challenged having to show her psychiatric injury was predominantly caused by industrial factors even though a physical injury would be compensable where a preexisting condition was simply aggravated by work.[5]

The WCAB agreed with the WCJ that Dr. Mosk's opinion was substantial evidence which established that employment did not predominantly cause the psychiatric injury, and benefits were barred under section 3208.3, subdivision (b)(1). The WCAB thus found it unnecessary to consider section 3208.3, subdivision (h).[6] Finally, the WCAB noted it was unauthorized to decide constitutional issues.[7]

In the pending writ petition, Sakotas again asserts that work predominantly caused her psychiatric injury according to Dr. Bell, who was more factually correct. Dr. Mosk, on the other hand, assumed family stresses were present and used apportionment terminology in his opinion. Her additional allegation of the unconstitutionality of section 3208.3, subdivision (b)(1) is

provisions for the comfort, health and safety and general welfare of any and all workers . . . to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party . . . ."

Insulation from tort damages in exchange for limited but swift compensation for industrial injuries, irrespective of fault, is commonly called the compensation bargain. (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743].)

[4]In *Kenneally v. Medical Board, supra,* 27 Cal.App.4th 489, the court found there was sufficient justification to deny a doctor depositions in preparation for a disciplinary hearing, even though attorneys have such right. The court declined to apply strict scrutiny to the equal protection claim because doctors do not belong to a suspect class, nor was there a fundamental right to a prehearing deposition or to work for a particular private or public employer. Strict scrutiny would require the discriminatory statute to promote a compelling state interest, and that the classification be necessary and narrowly drawn. In contrast, the rational basis test only requires what is sufficient to warrant classification not be arbitrary or that there be a reasonable basis to justify the law.

[5]It is well settled that under section 4750 and apportionment an employer is liable only for the disability resulting from an industrial aggravation of a disabling preexisting condition, and not the combined disability. Under section 4663, apportionment of disability to a preexisting disease process is allowed when part of the combined disability due to an aggravation at work would have resulted in the absence of the industrial injury from the normal progress of the preexisting disease. (*Franklin v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224 [145 Cal.Rptr. 22].)

[6]Since the decision was not based on section 3208.3, subdivision (h), the court will not address this subdivision of the statute further.

[7]See article III, section 3.5 of the California Constitution and *Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165], in which the Supreme Court also indicated constitutional issues can be initially raised on appeal.

that requiring predominant causation is a greater burden than the substantial factor test in tort law,[8] which is contrary to the compensation bargain.[9]

Motel 6 answers that Dr. Bell's report contained many inaccuracies, while Dr. Mosk's history should be excused because, as stated in deposition testimony, he was misinformed by Sakotas and had to rely on outside records. Responding to the constitutional issues, Motel 6 maintains that strict scrutiny of section 3208.3, subdivision (b)(1) is inapplicable since Sakotas does not belong to a suspect class, and there is no involvement of a recognized fundamental right such as the right to pursue a lawful occupation.

The California Applicant's Attorney's Association filed an amicus curiae brief concerning the constitutional issues, adding that since the constitutional language for providing workers' compensation includes all injuries, the Legislature is prohibited from discriminatorily denying benefits based on the type of injury suffered. In another amicus curiae brief filed, Boehm & Associates[10] similarly advocates that all psychiatric injuries are included under the California Constitution and within the compensation bargain. According to Boehm, it is unreasonable to deny benefits to an arbitrarily selected group of industrially injured workers just to save insurance premiums and to transfer the costs to the public.

## DISCUSSION

### Standard of Review

"In resolving the petition for writ of review, we must determine whether the evidence, when reviewed in the light of the entire record, supports the [WCAB's] decision [citations]; and in doing so, we must consider the weight or persuasiveness of all the evidence, not just whether there is substantial evidence in favor of the respondent. [Citation.]" (*Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].)

Review of the evidence in the case, in the light of the entire record, reveals numerous occasions of inaccuracies and/or omissions in the information supplied by Sakotas to Dr. Mosk. This information invariably related to Sakotas's nonindustrial stressors (filing bankruptcy, a schizophrenic son, an

---

[8]Sakotas cites BAJI No. 3.76, which states, "The law defines cause in its own particular way. A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm."

[9]Presumably Sakotas is again referring to article XIV, section 4 of the California Constitution. (See fn. 3, *ante*.)

[10]Boehm & Associates represents medical and disability lien claimants.

attempted suicide and alcohol abuse). While Dr. Mosk's opinion was based upon these, as well as other facts, he had to discover them by reviewing Sakotas's qualified medical examiner's reports. The substantiality of Dr. Mosk's opinions cannot be attacked by Sakotas's comparison of the relative accuracy of the information she herself provided.

■ "Unlike the court, the [WCAB] is empowered on reconsideration to resolve conflicts in the evidence, to make its own credibility determinations, and to reject the findings of the WCJ and enter its own findings on the basis of its review of the record; nevertheless, any award, order or decision of the Board must be supported by substantial evidence in the light of the entire record. [Citations.]" (*Bracken v. Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at p. 255.) ■ The WCJ relied upon solid, credible evidence to make wholly supported findings, and the WCAB's findings on reconsideration cannot be said to be based upon ". . . inferences which cannot be fairly drawn from the evidence, based on evidence lacking probative force, or based on a purely ' "fanciful conclusion." ' [Citation.]" (*Id.* at p. 256.)

### *Constitutionality of Section 3208.3, Subdivision (b)(1)*

■ "In considering an equal protection challenge, 'we must first determine the appropriate standard of review. [Citation.] The proper standard of review, as developed by the high court, depends upon the classification involved in, and interests affected by, the challenged law.' [Citation.] 'The challenged law will be subject to strict scrutiny only if it operates to the peculiar disadvantage of a suspect class [citation] or impinges on a fundamental right [citation].' [Citations.] 'Under this very severe standard, a discriminatory law will not be given effect unless its classification bears a close relation to the promoting of a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means possible.' [Citation.]" (*Kenneally v. Medical Board, supra,* 27 Cal.App.4th at pp. 495-496, fn. omitted.)

Sakotas, no more than Dr. Kenneally, does not belong to a suspect class. ■ The following suspect classifications have been identified: (1) race or national origin (*Korematsu v. United States* (1944) 323 U.S. 214 [65 S.Ct. 193, 89 L.Ed. 194]); (2) creed (*Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987 [176 Cal.Rptr. 569]); (3) wealth (*Douglas v. California* (1963) 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]); (4) gender (*Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]); and (5) alienage (*Takahashi v. Fish Comm'n* (1948) 334 U.S. 410 [68 S.Ct. 1138, 92 L.Ed. 1478]).

Nor can strict scrutiny be applied where there is no impingement of Sakotas's fundamental rights. Such fundamental rights to be protected by the stricter standards of reviewing classifications include: (1) personal liberty (*In re Jiminez* (1985) 166 Cal.App.3d 686 [212 Cal.Rptr. 550]); (2) the right of privacy (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937 [227 Cal.Rptr. 90, 719 P.2d 660]); (3) the right to procreation (*Skinner v. Oklahoma* (1942) 316 U.S. 535 [62 S.Ct. 1110, 86 L.Ed. 1655] overruled in part on other grounds in *Edelman v. Jordan* (1974) 415 U.S. 651, 652 [94 S.Ct. 1347, 1350, 39 L.Ed.2d 662, 666]); (4) the right to interstate travel (*Shapiro v. Thompson* (1969) 394 U.S. 618 [89 S.Ct. 1322, 22 L.Ed.2d 600]); (5) subject to certain limitations, the right to pursue a lawful occupation (*Sail'er Inn, Inc. v. Kirby, supra,* 5 Cal.3d 1); (6) the right to vote (*Johnson v. Hamilton* (1975) 15 Cal.3d 461 [125 Cal.Rptr. 129, 541 P.2d 881]); (7) the right to run for public office (*Ibid.*); (8) a juvenile's statutory right of appeal (*In re Arthur N.* (1974) 36 Cal.App.3d 935 [112 Cal.Rptr. 89]); (9) the right to defend one's property in court (*Payne v. Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565]); and (10) under the state equal protection provision, the right to a public education (*Serrano v. Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929]). ■ The right to file a workers' compensation claim for stress is not among the enumerated fundamental rights. Therefore, since section 3208.3, subdivision (b)(1) neither impinges upon Sakotas's fundamental rights, nor disadvantages a suspect class, strict scrutiny review is not required.

Rather, section 3208.3, subdivision (b)(1) will be upheld because it has a legitimate government purpose. Its legislative history, as discussed in *Hansen v. Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179 [23 Cal.Rptr.2d 30], demonstrates that the statute is rationally related to a legitimate government purpose.

"Labor Code section 3208.3 was enacted as part of the Margolin-Greene Workers' Compensation Reform Act of 1989. It is part of the Legislature's response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries. For years commentators have written critically about problems unique to the disposition of psychiatric claims, notably vagueness in defining the injury and problems of establishing industrial causation and apportionment." (*Hansen v. Workers' Compensation Appeals Bd., supra,* 18 Cal.App.4th at pp. 1183-1184, fn. omitted.)

As indicated, the Legislature enacted section 3208.3, subdivision (b)(1) to combat the proliferation of fraudulent psychiatric claims and reduce the

costs of workers' compensation coverage. In recognition of this intent, the Governor's signature message to the California Assembly contained the following language:

"This package of reforms saves money by tightening the standard for stress claims in the system, the fastest growing type of claim in the workers' compensation. [¶] . . . [¶]

"But equally important, these reforms crack down on those who are defrauding the system. This legislation marks the beginning of the end for the stress-mill millionaires.

"In short, this legislation gives us a significant handle on what have been exploding costs of workers' compensation." (Letter from Governor Wilson to the Members of the Cal. Assem., July 16, 1993.)

Rarely is the intent of the Legislature so clearly enunciated within the legislation itself: "It is the intent of the Legislature in enacting this section to establish a new and higher threshold of compensability for psychiatric injury under this division." (§ 3208.3, subd. (c).) Certainly, reducing the costs of workers' compensation coverage by eliminating the number of successful fraudulent claims is a legitimate purpose. Equally certain is that Sakotas has failed to meet her burden of demonstrating that section 3208.3, subdivision (b)(1) is not rationally related to this purpose. Therefore, the section does not violate Sakotas's equal protection rights.

Sakotas would have the result of her constitutional attack on section 3208.3, subdivision (b)(1) determined by *Brown v. Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]. In that case, the Supreme Court held the California automobile guest statute unconstitutional, stating: "[I]t is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits." (*Id.* at p. 875.)

The critical difference between *Brown* and our case is that, in *Brown,* the result was the elimination of the causes of action of an entire class of persons due to the fraudulent actions of some of them. Here, section 3208.3, subdivision (b)(1) only requires an employee suffering a psychiatric injury to satisfy a higher threshold of compensability (for entitlement).

Without any discussion or attempt to establish, in any manner, how section 3208.3, subdivision (b)(1) specifically violates her substantive due process rights, Sakotas nonetheless so claims. In the absence of specific

contentions and without citation to authority, there is no basis to conclude that section 3208.3, subdivision (b)(l) violates Sakotas's substantive due process rights.

## DISPOSITION

The petition for writ of review is denied. The opinion and order of the WCAB is affirmed. Costs are awarded to respondents.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied May 24, 2000, and petitioner's petition for review by the Supreme Court was denied July 19, 2000.