[No. A119814. First Dist., Div. Four. June 2, 2008.]

JOSE FACUNDO-GUERRERO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, NURSERYMEN'S
EXCHANGE et al., Respondents.

642

## Counsel

Daniel J. Smith and Armand Arabian for Petitioner.

David Bryan Leonard for California Society of Industrial Medicine & Surgery, Inc., as Amicus Curiae on behalf of Petitioner.

Graiwer & Kaplan and Charles R. Rondeau for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Jack R. Perko for International Chiropractic Association of California as Amicus Curiae on behalf of Petitioner.

Mayer Brown, Donald M. Falk, Philip R. Recht and Christopher P. Murphy for California Chiropractic Association as Amicus Curiae on behalf of Petitioner.

Robert Feinglass for Boehm & Associates as Amicus Curiae on behalf of Petitioner.

Laughlin, Falbo, Levy & Moresi, Brian D. Egan and Kate L. Kroeger for Respondent Nurserymen's Exchange.

No appearance for Respondents Workers' Compensation Appeals Board and Argonaut Insurance Company.

Law Offices of Saul Allweis and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Respondents

Thelen Reid Brown Raysman & Steiner, Daniel Sovocool and Jennifer McGlone for California Chamber of Commerce as Amicus Curiae on behalf of Respondents.

OPINION

RUVOLO, P. J.—

## I. INTRODUCTION

Labor Code[1] section 4604.5, subdivision (d) (section 4604.5(d)) was enacted in 2003 as Senate Bill No. 228 (2003–2004 Reg. Sess.) (Stats. 2003, ch. 639, § 27) (Senate Bill 228), and provided that, unless approved by an injured employee's employer, benefits for chiropractic treatments and physical therapy sessions were limited to no more than 24 visits per industrial injury, if the injury occurred after January 1, 2004. The statute was amended the following year as part of Senate Bill No. 899 (2003–2004 Reg. Sess.) (Stats. 2004, ch. 34, § 25) (Senate Bill 899), a comprehensive reform of this state's workers' compensation system. As pertinent to section 4604.5(d), Senate Bill 899 left in place the cap on chiropractic and physical therapy visits, but added a limit of 24 occupational therapy visits per industrial injury as well.

Petitioner Jose Facundo-Guerrero (petitioner) received 76 chiropractic treatments following an industrial injury he sustained while working for respondent Nurserymen's Exchange (Nurserymen's), whose insurer was respondent Argonaut Insurance Company. He filed a writ of review with this court after a Workers' Compensation Appeals Board (WCAB) decision determined that he was entitled to benefits covering only 24 chiropractic treatments, as specified by section 4604.5(d).

Petitioner contends that section 4604.5(d) violates the California Constitution's mandate to the state Legislature, that it implement a "complete system of workers' compensation," including "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury." (Cal. Const., art. XIV, § 4 (article XIV, section 4).) Similarly, he contends that vesting sole authority in employers to approve benefits for more than 24 treatments without affording workers a right of judicial review of that decision is an unconstitutional delegation of legislative power that denies him due process.

Lastly, he also argues that the limitation on the number of chiropractic treatments in section 4604.5(d) violates his right to equal protection under the law, as compared to (1) the class of injured workers who undergo modalities of treatment not statutorily limited, or (2) the class of workers injured prior to January 1, 2004, the effective date of the statute, who were not limited to 24 chiropractic treatments.

---

[1] All statutory references in this opinion are to the Labor Code, unless otherwise indicated.

We reject all of these constitutional challenges to section 4604.5(d), and affirm the decision of the WCAB.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2006, petitioner filed a request for a determination that he was entitled to medical treatment under section 4600, and requested an expedited hearing pursuant to section 5502, subdivision (b). He claimed Nurserymen's had refused to authorize more than 24 chiropractor visits to treat his industrial injury, including those treatments occurring before Nurserymen's accepted his initial claim for benefits.

A hearing was held before a WCAB judge (WCJ) on February 16, 2007,[2] and an initial decision was issued on March 9. That decision was rescinded by the WCJ upon petitioner's application, and a further hearing was held on July 23. A new decision was filed on July 30, and petitioner filed a motion to reconsider that decision on several grounds, including that (1) petitioner's treating chiropractor was entitled to manage his further treatment and remain as petitioner's treating health care provider, and (2) the 24 chiropractic visit limitation in section 4604.5(d) was unconstitutional under both the California and federal Constitutions.

The WCJ determined that petitioner's first ground for reconsideration had merit. Therefore, a new decision was issued on September 5, in which the WCJ rescinded her July 30 decision, and made new findings and conclusions. These new findings included that (1) petitioner was entitled to no more than 24 chiropractic treatments per industrial injury under section 4604.5(d), and this section was applicable because petitioner's injury occurred after January 1, 2004; (2) because petitioner's treating chiropractor, Dr. Pevec, was a member of Nurserymen's medical provider network, Dr. Pevec could serve as petitioner's duly selected treating health care provider; and (3) therefore, petitioner was entitled to additional visits with Dr. Pevec "for the purpose of enabling Dr. Pevec to manage his care and render opinions on all medical issues necessary to determine his eligibility for compensation." As to petitioner's constitutional challenges, the WCJ concluded that she lacked the legal authority to decide them.

Petitioner sought reconsideration with the WCAB. The WCAB granted reconsideration and adopted the September 5 decision of the WCJ as its own. Once again, it reaffirmed that it lacked the authority to decide appellant's constitutional challenged to section 4604.5(d). The WCAB's decision was filed on October 11.

[2] All further dates in this opinion refer to calendar year 2007, unless otherwise indicated.

Petitioner filed a petition for writ of review with this court on November 26, which was answered by Nurserymen's on December 19. This court granted the writ on January 17, 2008.

## III. LEGAL DISCUSSION

### A. Petitioner's Constitutional Challenge Under Article XIV, Section 4

Section 4604.5(d) was enacted in 2003 as Senate Bill 228. The statute was amended the following year as part of Senate Bill 899, a comprehensive reform of this state's workers' compensation system. (*Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 521 [31 Cal.Rptr.3d 789] (*Rio Linda*).) Section 4604.5(d) reads as follows:

"(d)(1) Notwithstanding the medical treatment utilization schedule or the guidelines set forth in the American College of Occupational and Environmental Medicine's Occupational Medicine Practice Guidelines, for injuries occurring on and after January 1, 2004, an employee shall be entitled to no more than 24 chiropractic, 24 occupational therapy, and 24 physical therapy visits per industrial injury.

"(2) Paragraph (1) shall not apply when an employer authorizes, in writing, additional visits to a health care practitioner for physical medicine services.

"(3) Paragraph (1) shall not apply to visits for postsurgical physical medicine and postsurgical rehabilitation services provided in compliance with a postsurgical treatment utilization schedule established by the administrative director pursuant to Section 5307.27."

█ Because Nurserymen's would not approve more than 24 chiropractic treatments for petitioner, he contends that section 4604.5, both facially and as applied to him, violates article XIV, section 4. In deciding this issue we are guided by general principles applicable to statutory construction, including that " ' "[a]ll presumptions and intendments favor the validity of a statute . . . . Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." ' [Citation.]" (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645].) At the same time, " '. . . we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." [Citation.]' [Citations.]" (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 569 [63 Cal.Rptr.2d 467, 936 P.2d 473].)

The first, and for our purposes the most important, paragraph of article XIV, section 4 states in relevant part as follows: "Sec. 4. The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving them from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government."

Petitioner asserts that article XIV, section 4's proviso vesting "plenary power" in the Legislature to create and enforce "a complete system of workers' compensation," including making "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury," is nothing short of a constitutional mandate that the types and numbers of healing treatments available to injured workers cannot be limited by the Legislature. In his view, the state Constitution prohibits restrictions such as those contained in section 4604.5(d), which limit benefits to a specific number of chiropractic treatments. While presenting his arguments with great force, petitioner cites little legal authority bearing on the precise constitutional challenges he mounts, admitting this case presents an issue "of first impression, with questions yet to be answered by any court regarding the implementation of [section] 4604.5(d)."

■ Our first task is to determine what is intended by the broad language in article XIV, section 4, and whether the proper interpretation of that

provision supports petitioner's argument. "The principles of constitutional interpretation are similar to those governing statutory construction. In interpreting a constitution's provision, our paramount task is to ascertain the intent of those who enacted it. [Citation.] To determine that intent, we 'look first to the language of the constitutional text, giving the words their ordinary meaning.' [Citation.] If the language is clear, there is no need for construction. [Citation.] If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent. [Citations.]" (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198], cited with approval in *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226].)

■ Petitioner argues that the language of article XIV, section 4 is unambiguous. "Complete" and "full" need no further elucidation, he claims. He contends that the Legislature was commanded to create and enact a workers' compensation system of virtually unlimited breadth with the unwavering goal of furnishing "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such [industrial] injury." But, if that were so, why does section 4 vest the Legislature with "plenary power, unlimited by any provision of this Constitution" to create such a system? Given this seemingly internal inconsistency, was it really the voters' intent to command the Legislature to act in the way petitioner perceives, including removing from lawmakers the power to enact laws which limit the scope of benefits available to workers injured by industrial accidents?

■ Troubled by this facial inconsistency, "we conclude that the wording of the provision at most creates an ambiguity, and that it is appropriate and necessary to consider the origin and background of this constitutional language to determine whether, in light of the purpose and objective of the constitutional provision, it is reasonable to interpret it in the manner proposed . . . ." (*Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1036–1037 [44 Cal.Rptr.3d 644, 136 P.3d 178].) Constitutional language cannot be given an unreasonably expansive construction unrelated to the purpose and intended scope of the constitutional provision in which that language appears. (*Id.* at p. 1036.) With this in mind, we turn to cases which have discussed the purpose and scope of article XIV, section 4.

Principal among these cases is *Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165] (*Mathews*). In *Mathews*, the widow of an injured worker petitioned the Supreme Court after the WCAB denied her survivor benefits following her husband's death from injuries he received in a fight with a coworker. The Supreme Court noted that

the case involved the "deceptively simple" issue of whether section 3600, former subdivision (g) (section 3600(g)), which bars an " 'initial physical aggressor' " from benefits, "is consonant with section 21, article XX of the California Constitution." (*Mathews, supra*, 6 Cal.3d at pp. 723–724 & fn. 2.) Article XX, section 21 (article XX, section 21) was the predecessor to article XIV, section 4, until its repeal in 1976, when section 4 was enacted. (Historical Notes, 2A West's Ann. Cal. Const. (1996 ed.) foll. art. XIV, § 4, p. 544.)

The first paragraph of article XX, section 21 was virtually identical to article XIV, section 4, and expressly vested in the Legislature " 'plenary power, unlimited by any provision of this Constitution,' " to create and enforce a " 'complete system of workmen's [*sic*] compensation,' " which provides " 'full provision' " of benefits to an injured worker " 'irrespective of the fault of any party.' " (*Mathews, supra*, 6 Cal.3d at p. 724, fn. 2, italics omitted.) Like petitioner here, the claimant in *Mathews* argued that section 3600(g), which excepted from benefits any injury arising from an altercation in which the injured employee was the initial physical aggressor, was unconstitutional in that it conflicted with section 21.[3]

The Supreme Court held that the state Constitution did not prohibit the Legislature from conditioning the right of compensation, as expressed in section 3600(g). (*Mathews, supra*, 6 Cal.3d at pp. 724–725.) Noting that while the claimant's argument that the exception in section 3600(g) was in conflict with article XX, section 21 had "a surface plausibility, an examination of the legislative history behind the workmen's compensation laws and [section 21] demonstrates that the contention rests upon a basic misconstruction of the Constitution." (*Mathews, supra*, at p. 728.)

The high court explained that during the first two decades of the 20th century, California joined many other states by enacting a workers' compensation system that operated largely without regard for the common law system of fault. Because the enactment of a no-fault system of workers' compensation was such a radical change from the common law relating to recompense for occupational injuries, the Legislature sponsored an amendment to the state Constitution in the form of article XX, section 21, "to remove all doubts as to the constitutionality of then existing workmen's compensation laws." (*Mathews, supra*, 6 Cal.3d at pp. 729–733.)

---

[3] Section 3600 provided, in material part: " 'Liability for the compensation provided by this division, . . . shall, without regard to negligence, exist against an employer . . . for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] . . . [¶] (g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.' " (*Mathews, supra*, 6 Cal.3d at p. 724, fn. 1, italics omitted.)

The Supreme Court in *Mathews* clarified that, rather than imposing a mandate on the Legislature to create and enforce an unlimited system of workers' compensation benefits, article XX, section 21 was intended to safeguard the full, unfettered authority of the Legislature to legislate in this area, as it saw fit. Thus, the intent of this section was, and is, quite the opposite of what had been ascribed by the claimant in *Mathews,* and by petitioner in this case. That intent was not to impose a lawmaking mandate upon the Legislature, but to endow that body expressly with exclusive and "plenary" authority to determine the contours and content of our state's workers' compensation system, including the power to limit benefits. The court noted further that if article XX, section 21 prohibited the Legislature from limiting entitlement to compensation, it would "cast doubt" on a host of other statutes comprising other parts of the workers' compensation scheme. (*Mathews, supra,* 6 Cal.3d at p. 735.) In light of the provision's history, "[w]e do not find that [section 21] requires any such wholesale butchery of the existing workmen's compensation law." (*Mathews, supra,* 6 Cal.3d at pp. 735–736; see also *Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1002–1003 [229 Cal.Rptr. 494].)

More recently, an injured Wal-Mart employee argued the unconstitutionality of another section of the Labor Code in *Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1435 [5 Cal.Rptr.3d 822] (*Wal-Mart*). In that case, the employee allegedly suffered an emotional injury incident to a physical injury she sustained while on the job. Section 3208.3, subdivision (d) limited benefits for psychiatric injuries to those employees who had been working for the potentially liable employer for more than six months. Since the employee had worked for Wal-Mart for less than six months, her claim for benefits had been denied. (*Wal-Mart, supra,* at pp. 1438–1439.) As a result, one of several arguments made on appeal was that section 3208.3 was unconstitutional insofar as it restricted a worker's right to benefits. In response, the court stated:

"Finally, at oral argument Applicant suggested that section 3208.3 was unconstitutional insofar as it purports to abridge a worker's right to benefits. But the California Constitution does not make such a right absolute. [Article XIV, section 4] gives the Legislature 'plenary power' to establish a system of workers' compensation for 'any or all' workers; in enacting the statute, the Legislature has merely elected to exercise its power to exclude certain workers. (See also, e.g., section 3352, subd. (h).) In other respects the constitutionality of the statute has been repeatedly upheld. (E.g., *Sakotas* [*v. Workers' Comp. Appeals Bd.* (2000)] 80 Cal.App.4th [262,] 270–274 [95 Cal.Rptr.2d 153], rejecting equal protection and due process arguments.)" (*Wal-Mart, supra,* 112 Cal.App.4th at pp. 1442–1443, fn. omitted.)

The constitutionality of another portion of Senate Bill 899 enacted effective January 1, 2004, was attacked in *Rio Linda, supra*, 131 Cal.App.4th 517. In that case, the challenge was to the change in the law relating to how combined industrial and nonindustrial injuries were apportioned for workers' compensation benefit purposes. The change in apportionment contained in Senate Bill 899, which was enacted as new sections 4663 and 4664, was less advantageous to workers injured after January 1, 2004. (*Rio Linda, supra*, at pp. 525–526.) One of the grounds for this legal challenge was that the change in apportionment, which decreased compensation benefits, was unconstitutional because article XIV, section 4 "guarantees that injured workers will be adequately compensated for their injuries, and requires that the workers' compensation system 'accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character. . . .' " (131 Cal.App.4th at p. 532.)

The *Rio Linda* court rejected this argument, citing the language in *Wal-Mart* that "[t]he California Constitution does not make a worker's right to benefits absolute. . . ." (*Rio Linda, supra*, 131 Cal.App.4th at p. 532, citation omitted.) The court further noted that, as a court, it was not "allowed to second-guess the apparent policy decision of the Legislature, in addressing the workers' compensation crisis (Stats. 2004, ch. 34, § 49) . . . ." (*Ibid.*)

■ Thus, it is abundantly clear that as a matter of law, article XIV, section 4 neither restricts the Legislature's ability to limit the number of chiropractic treatments for which the workers' compensation system must be financially responsible, nor does it expand an injured worker's constitutional rights to include an entitlement to receive unlimited treatments. Like the court in *Rio Linda*, we will not second-guess the wisdom of the Legislature in meeting the workers' compensation crisis in this state by, among other things, specifying the maximum amount of chiropractic care an injured worker may receive for a single industrial accident.[4] The Legislature clearly has the constitutional authority to make that determination.

---

[4] One of the principal cases petitioner relies on is *Six Flags, Inc. v. Workers' Comp. Appeals Bd.* (2006) 145 Cal.App.4th 91 [51 Cal.Rptr.3d 377] (*Six Flags*). That case is inapposite. In *Six Flags* the court examined a section of the Labor Code which provided that when a worker without dependents is fatally injured during the course and scope of employment, the employer must pay $250,000 to the deceased worker's estate as a compensation death benefit. The court held that this provision was unconstitutional because the California Constitution does not identify workers' estates as a class of beneficiaries under the workers' compensation law. There, the court held that the Legislature could not *expand* upon the plenary power authorized by that constitutional provision by allowing the estate of a deceased worker to be included as a "dependent beneficiary." On the other hand, the present case concerns whether article XIV, section 4 prohibits the Legislature from exercising *less* than its full plenary power, an issue not addressed by the *Six Flags* court.

Petitioner alternatively claims that the statutory exception allowing an employer to authorize chiropractic services in excess of 24 treatments constitutes an unconstitutional delegation of legislative power, or otherwise constitutes a deprivation of due process. As to the unlawful delegation of power prong of this claim, petitioner cites no authority except to argue that giving the employer the right to approve visits in excess of those allowed by the statute conflicts with the second paragraph of article XIV, section 4. That paragraph vests the Legislature with plenary power to "provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination . . . ." (Art. XIV, § 4.)

██ Even if this could be read as *requiring* the Legislature to build a dispute adjudication or resolution procedure into the workers' compensation system (see discussion of *Mathews, supra,* 6 Cal.3d 719, *ante*), a disagreement with an employer's refusal to approve excess treatments does not give rise to a legally cognizable "dispute." The statute limits chiropractic visits even if the chiropractor, or any other practitioner of the healing arts, expresses the view that the claimant would benefit from further treatments. The employer has the sole discretion as to whether to approve payment for more than 24 visits. The decision does not turn on the worker's need for the treatment, or any other factual determination.[5] Therefore, because there is no legal or factual disagreement, or "dispute," arising from the decision to approve or disapprove more treatments, no adjudication by a neutral party is necessary.

As to the second, due process, prong of his argument, petitioner relies on *People v. Lockheed Shipbuilding & Constr. Co.* (1973) 35 Cal.App.3d 776 [111 Cal.Rptr. 106] (*Lockheed*). In that case, the Court of Appeal held that a statute joining the authority of the Division of Industrial Safety to investigate the cause of all industrial injuries resulting in disability or death, and make " 'just and reasonable' " orders or recommendations with another statute making a subsequent violation of such an order a misdemeanor was a violation of due process because there was no provision for a hearing on the alleged safety violation. (*Id.* at pp. 779–780.) Because the violator of the safety order could be criminally liable for the violation, due process required

---

[5] Petitioner catalogues those sections of the Labor Code which provide for dispute resolution, including where there is a "dispute" over the provision of reasonable treatment, whether the industrial injury is permanent, which rating schedule applies, apportionment between industrial and nonindustrial percentages of disability, and the amount of temporary disability payments due. These are all examples of actual factual or legal disputes which legitimately are subject to a formalized adjudicatory regime. However, an employer's refusal to approve excess chiropractic treatments is not dependent on deciding any "dispute" of law or fact.

notice and a hearing. The *Lockheed* case, which involved the specter of a criminal prosecution for violation of safety orders, has nothing to do with the subject at hand.

Nor are petitioner's citations to *Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119 [18 Cal.Rptr.2d 626] (*Bayscene*) and *Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177 [77 Cal.Rptr.2d 289] (*Costa*), of assistance. In *Bayscene*, Division One of the Fourth District Court of Appeal struck down on due process grounds a city ordinance which required binding arbitration for mobilehome park rent disputes. The court stressed that the primary failing of the ordinance was that it did not provide for judicial review of the evidence; instead, the issues on appeal were "essentially limited to fraud, corruption, or other misconduct of a party or the arbitrator." (*Bayscene, supra*, 15 Cal.App.4th at p. 134.) The case is inapposite, involving a local ordinance compelling private parties to submit their rent control disputes to binding arbitration without any right of judicial review for errors of fact or law.

In *Costa*, an electrician filed a claim for benefits with the WCAB and requested an expedited hearing because he was in " 'dire need of medical treatment including home care.' " (*Costa, supra*, 65 Cal.App.4th at p. 1181.) There, the court considered the constitutionality of provisions in a collective bargaining agreement that required employees to exhaust contractual grievance and arbitration procedures before exercising their constitutional right of review by the WCAB. Because the applicable constitutional provision specifically authorized the use of arbitration to resolve workers' compensation claims and the arbitration decisions were subject to review by the WCAB and the Courts of Appeal, the court held that the provisions were lawful. Not only did *Costa* involve a clear legal and factual dispute, but it is difficult to understand how the holding in this case bears on petitioner's argument, and petitioner's brief on this point is unhelpful.

■ In conclusion, we find nothing unconstitutional about section 4604.5(d). As we have already discussed, the Legislature has legal authority to enact a law limiting petitioner's right to receive chiropractic treatment. The fact that our state lawmakers decided to allow an employer to remove the 24-visit cap does not constitute an unconstitutional delegation of power. Moreover, because an employer's decision is not tethered to any factual or legal dispute requiring adjudication, due process under either the state or federal Constitutions is not implicated by section 4604.5(d)

## B. Petitioner's Equal Protection Challenge

Alternatively, petitioner claims that section 4604.5(d) violates his federal and state constitutional right to equal protection under the law. He contends

that limiting the number of chiropractic treatments for which he, and others who are similarly situated, may be compensated unlawfully treats his class of injured workers differently from the class of injured workers who undergo forms of treatment other than chiropractic care. Also, because the limitation applies only to workers injured after January 1, 2004, he claims he is being afforded unequal protection of the workers' compensation law as compared to the class of workers who were injured prior to January 1, 2004.

An equal protection argument similar to that advanced by petitioner was raised in *Sakotas v. Workers' Comp. Appeals Bd., supra*, 80 Cal.App.4th 262 (*Sakotas*). In that case, a Motel 6 employee filed a claim for workers' compensation benefits relating to a psychological injury she allegedly sustained while at work. Medical expert testimony in the case concluded that 80 percent of the employee's psychological disability resulted from nonindustrial circumstances and conditions. Because a majority of the employee's disability was not work related, the WCJ concluded that the employee was not entitled to benefits pursuant to section 3208.3, subdivision (b)(1). As amended in 1993, that section provides: "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury." (§ 3208.3, subd. (b)(1); Stats. 1993, ch. 118, § 1, p. 1225; see *Sakotas, supra,* 80 Cal.App.4th at pp. 265–267.) The employee, and her amicus curiae, contended that imposing a predominant causation test as a condition to her receipt of benefits discriminated against her based on the type of injury suffered. She claimed this form of discrimination amounted to a violation of her right to equal protection. (80 Cal.App.4th at p. 270.)

The court rejected the employee's equal protection argument, noting that she was not a member of a suspect class, a foundational prerequisite for making such a constitutional claim. (*Sakotas, supra,* 80 Cal.App.4th at p. 271.)[6] Her not being a member of a suspect class prevented the court from examining the claim through the stringent prism of strict scrutiny. Instead the court held that section 3208.3 would be upheld so long as its enactment had a legitimate governmental purpose. (80 Cal.App.4th at p. 272.) The court concluded that such a rational purpose was evident from the fact that section 3208.3 was enacted as part of the Margolin-Greene Workers' Compensation Reform Act of 1989, which sought to combat the proliferation of fraudulent psychiatric claims and to reduce the costs of workers' compensation coverage. (80 Cal.App.4th at pp. 272–273.)

---

[6] The five suspect classes recognized by law were enumerated by the court as including (1) race or national origin, (2) creed, (3) wealth, (4) gender, and (5) alienage. (*Sakotas, supra,* 80 Cal.App.4th at p. 271.)

■ "The rational basis standard applies to equal protection challenges of economic and social welfare legislation under both the federal and state Constitutions. [Citations.]" (*Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1249 [16 Cal.Rptr.3d 563].) " ' " '[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are "plausible reasons" for [the classification] "our inquiry is at an end." ' " ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482 [97 Cal.Rptr.2d 334, 2 P.3d 581], as quoted in *Samples v. Brown* (2007) 146 Cal.App.4th 787, 807 [53 Cal.Rptr.3d 216]; see also *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096]; *Brown v. Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212] [under state and federal equal protection provisions, a statute may single out a class for distinctive treatment if the classification bears a rational relation to the purposes of the legislation].) A party challenging a classification has the burden of negating " ' "every conceivable basis which might support it." [Citations.]' [Citation.]" (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 990 [45 Cal.Rptr.3d 126].)

■ Without question there is a rational basis for the enactment of section 4604.5(d). When Senate Bill 899 was passed, the Legislature also declared it to be urgency legislation: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time, it is necessary for this act to take effect immediately." (Stats. 2004, ch. 34, § 49; see *McCarthy v. Workers' Comp. Appeals Bd.* (2006) 135 Cal.App.4th 1230, 1235–1236 [37 Cal.Rptr.3d 909].) Quite evidently, section 4604.5(d), which was part of Senate Bill 899, was enacted as one component of a major reform of the state's workers' compensation system, a system perceived to be in dire financial straits at the time. By limiting benefits, the reforms had the clear purpose of alleviating "a perceived crisis in skyrocketing workers' compensation costs. [Citations.]" (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1329 [57 Cal.Rptr.3d 644, 156 P.3d 1100]; Street & Hummel, *Recent Developments in Insurance Regulation* (Winter 2005) 40 Tort Trial & Ins. Prac. L.J., 567, 582.)

The Legislature's decision to reduce the unlimited availability of chiropractic treatments to workers' compensation claimants is rationally related to that effort. Like our refusal to second-guess the Legislature's wisdom in enacting the 2004 amendments in considering petitioner's other constitutional arguments, we must similarly refrain from doing so under the guise of an equal protection challenge. "[E]qual protection is not a license for courts to judge

the wisdom, fairness, or logic of legislative choices." (*FCC v. Beach Communications, Inc., supra*, 508 U.S. at p. 313.) Accordingly, we reject petitioner's alternative equal protection argument.

## IV. DISPOSITION

The decision of the WCAB is affirmed. Each side to bear its own costs on appeal.

Reardon, J., and Sepulveda, J., concurred.

Petitioner's petition for review by the Supreme Court was denied September 10, 2008, S165029.