[No. B226102. Second Dist., Div. Three. Dec. 6, 2011.]

MARGARITA ALVAREZ BAUTISTA et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA et al., Defendants and Respondents.

720

COUNSEL

Munger, Tolles & Olson, Bradley S. Phillips, Stuart N. Senator, Shoshana E. Bannett, Gabriel P. Sanchez; Public Counsel Law Center, Catherine Lhamon, Maureen Carroll; ACLU of Southern California, Mark D. Rosenbaum; ACLU Foundation of San Diego and Imperial Counties and David Blair-Loy for Plaintiffs and Appellants.

Clare Pastore and Megan Beaman for California Rural Legal Assistance, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Vanessa L. Holton, Frank Nelson Adkins, Anthony Mischel, Sarah L. Cohen; Amy Martin and William Nguyen for Defendants and Respondents State of California and Department of Industrial Relations.

David Beales for Defendant and Respondent California Occupational Safety and Health Standards Board.

OPINION

ALDRICH, J.—California Constitution, article XIV, section 4 (article XIV, section 4) grants the Legislature plenary power to create a complete system of workers' compensation. As defined in the Constitution, the workers' compensation system includes a "full provision for securing safety in places of employment." Appellants are individual farmworkers[1] and the United Farm Workers of America who have filed suit against the state, the Department of Industrial Relations (the DIR), and the Occupational Safety and Health Standards Board (Standards Board), for failing to comply with this constitutional duty. The complaint alleges the current heat-illness-prevention regulation

---

[1] The individual plaintiffs include Margarita Alvarez Bautista, Ana Rosa Bautista, Socorro Rivera, Mauricia Calvillo, and Natividad Carrillo.

(Cal. Code Regs., tit. 8, § 3395 (section 3395)), promulgated by the Standards Board, does not ensure the safety of farmworkers from heat-related illnesses. Frustrated by the administrative process before the Standards Board to amend section 3395, appellants turned to the courts seeking declaratory and injunctive relief.

In this case, we must determine if appellants have stated a cause of action for a violation of article XIV, section 4. That determination turns on whether article XIV, section 4 is self-executing, meaning that the constitutional provision is so complete with respect to the nature of the right and the means to enforce it that no further action by the Legislature is necessary. We conclude that article XIV, section 4 is not self-executing insofar as it is a source of a judicially enforceable right. Rather, the constitutional provision directs the Legislature to create and enact, through appropriate legislation, a complete system of workers' compensation, which includes enacting safety laws. We also conclude that appellants' request for declaratory and injunctive relief violates the separation of powers doctrine as appellants ask this court to divest the legislative and executive branches of discretion to promulgate and enforce safety and health regulations. We affirm the superior court's judgment of dismissal.

## BACKGROUND

Article XIV, section 4 grants the Legislature "plenary power" to create a complete system of workers' compensation.[2] The article lists "provisions" of

---

[2] Article XIV, section 4 states in pertinent part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government."

a workers' compensation system, including a "full provision for securing safety in places of employment."[3] (Art. XIV, § 4.) As stated in article XIV, section 4, a complete system of workers' compensation is "expressly declared to be the social public policy of this State, binding upon all departments of the State government." The second paragraph in article XIV, section 4 gives the Legislature discretionary authority to "combine in one statute all the provisions for a complete system of workers' compensation, as herein defined."

Pursuant to the plenary power granted by article XIV, section 4, the Legislature has enacted a comprehensive statutory scheme governing workers' compensation law. (Lab. Code, § 3200 et seq.) This plenary grant of authority permits the Legislature to enact, amend, and repeal workers' compensation laws as it deems appropriate. (See *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 527 [31 Cal.Rptr.3d 789].)

The Legislature also has enacted, pursuant to its plenary power, a statutory scheme known as the California Occupational Safety and Health Act of 1973 (the Act) (Lab. Code, § 6300 et seq.) to assure "safe and healthful working conditions for all California working men and women" through enforcement of effective regulations. (Lab. Code, § 6300.) The Act is administered by three agencies, including the Standards Board. (Lab. Code, §§ 6302, 6305, 6307.) The Standards Board is appointed by the Governor, and its primary responsibility is to adopt, amend, and repeal occupational safety and health standards. (Lab. Code, §§ 140, subd. (a), 142.3, 6305.) The Standards Board is the only agency in the state authorized to adopt occupational safety and health standards. (Lab. Code, § 142.3, subd. (a)(1).) The DIR is responsible for administering the state plan for the development and enforcement of occupational safety and health standards. (Lab. Code, §§ 50.5, 50.7, subd. (a).) The DIR also administers the workers' compensation system. (Lab. Code, §§ 50, 50.7, 56.)

## 1. *Section 3395—Heat-illness-prevention Regulation*

In 2005, the Standards Board promulgated the heat-illness-prevention regulation, which applies to all outdoor places of employment. (§ 3395,

---

[3] Appellants also contend that the state and its agencies have a constitutional duty to secure safety in employment by referring to the provision in article XIV, section 4 addressing workers' compensation benefits. The use of "safety" when read in context is part of the "adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party." (Art. XIV, § 4.) Since benefits are not at issue, our focus is on the provision "for securing safety in places of employment."

subd. (a)(1), (2)(A)–(E).) The regulation sets forth standards for access to drinking water and shade, high-heat procedures for employers, and training to recognize the risk factors for heat illness. (*Id.*, subds. (c)–(f).)

Appellants advocated improvements to the existing heat-illness-prevention regulation, met with state officials, and provided detailed recommendations for improvements to section 3395. (See Lab. Code, §§ 142.2 [consideration of proposed new orders or standards], 142.3 [adoption, amendment or repeal of standards and orders].) Appellants claim these efforts were "futile," and they were "left with no choice but to ask the Court to require the State to take action to prevent more farm workers from suffering serious heat illness or dying."

2.  *Complaint Alleges Violation of Article XIV, Section 4 Arising from the Inadequacy of the Heat-illness-prevention Regulation*

The operative first amended complaint (complaint) asserts a violation of article XIV, section 4. The complaint alleges there is a constitutional duty on the part of the state to create a workers' compensation system that adequately protects the safety of farmworkers in California. The state allegedly has failed to satisfy its constitutional duty by (1) failing to adopt adequate requirements for monitoring heat stress; (2) failing to impose mandatory requirements on the growers; (3) failing to structure an effective enforcement system; (4) failing to issue citations and impose adequate penalties; and (5) failing to make penalties meaningful. The complaint seeks a declaration that the state, the DIR, and the Standards Board "have failed reasonably and adequately to perform their constitutional duty to create and enforce a system of workers' compensation that makes full provision for securing the safety of farm workers against heat-related illness or death," thereby violating plaintiffs' constitutional rights. The prayer for injunctive relief seeks a mandate that the state, through the DIR and the Standards Board, create and enforce a system of workers' compensation that "makes full provision for securing the safety of farm workers against heat-related illness or death."

The trial court sustained a demurrer to this cause of action, ordering the dismissal of the state, the DIR, and the Standards Board. Appellants' appeal followed.

## DISCUSSION

This appeal presents two constitutional issues affecting the viability of appellants' lawsuit against the state and the named state agencies. First, we must determine whether article XIV, section 4 is self-executing, meaning no legislative action is necessary to enforce that constitutional right. Second, we

must also determine whether appellants' request for the courts to declare that the state has not met its constitutional duty, and to mandate that the state adopt additional safety measures to prevent heat-related illnesses among farmworkers, violates the separation of powers doctrine. These issues are questions of law. (*Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 287 [109 Cal.Rptr.3d 620, 231 P.3d 350].) Our resolution of these issues precludes appellants from stating a cause of action.

1. *Article XIV, Section 4 Is Not Self-executing and Requires Implementing Legislation to Give Effect to the Constitutional Right*

As noted, appellants do not challenge the legislative authority of the Standards Board to adopt safety standards or the constitutionality of the heat-illness-prevention regulation promulgated by the Standards Board. Rather, they attack the state and the named state agencies (DIR, Standards Board) for failing to perform their constitutional duty under article XIV, section 4 to create a workers' compensation system that secures the safety of farmworkers.

■ To determine whether appellants have a viable cause of action, we must interpret article XIV, section 4. We are guided by principles similar to those governing statutory interpretation. (*Greene v. Marin County Flood Control & Water Conservation Dist., supra,* 49 Cal.4th at pp. 289–290.) The objective is to ascertain the intent of those who enacted the provision. To determine intent, we look first to the language of the constitutional text, giving the words their ordinary meaning. (*Id.* at p. 290.) When the language is clear and there is no uncertainty, there is no need for construction. (*Ibid.*) If the language permits more than one reasonable interpretation, we may consider various extrinsic aids, including the voters' intent, which is entitled to great weight. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16–18 [26 Cal.Rptr.2d 834, 865 P.2d 633].)

■ Appellants contend that based on the language of article XIV, section 4, implementing legislation is unnecessary to give effect to the constitutional right of securing safety in places of employment. A constitutional provision "will . . . be presumed to be self-executing, and will be given effect without legislation," unless a contrary intention is clearly expressed. (*Taylor v. Madigan* (1975) 53 Cal.App.3d 943, 950 [126 Cal.Rptr. 376].) The provision "must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms and there is no language indicating that the subject is referred to the Legislature for action . . . ." (*Id.* at p. 951; see also *Flood v. Riggs* (1978) 80 Cal.App.3d

138, 154 [145 Cal.Rptr. 573].) As we shall explain, neither the plain language of the constitutional provision nor the legislative history supports appellants' construction of article XIV, section 4.

a. *Article XIV, Section 4 Expresses a Clear Intent That Implementing Legislation Is Necessary to Give Effect to This Constitutional Right*

■ Appellants contend the presumption that article XIV, section 4 is self-executing cannot be overcome because a contrary intention is not clearly expressed in the constitutional provision. Moreover, they maintain that the language in article XIV, section 4 confirms the provision is self-executing because (1) the legislative directive is not mandatory, and (2) article XIV, section 4 does not confer a new right, which would be inoperative unless supplemented by legislation. We read the plain language as expressing a contrary intent sufficient to overcome the self-executing presumption.

Article XIV, section 4 grants the Legislature plenary power, unlimited by any provision of the California Constitution, to create and enforce a complete system of workers' compensation, *by appropriate legislation*. The grant of "plenary power," gives the Legislature complete, absolute, and unqualified power to create and enact the workers' compensation system. (Webster's 3d New Internat. Dict. (1971) p. 1739.) The Constitution defines a complete system of workers' compensation, to include a "full provision for securing safety in places of employment." (Art. XIV, § 4.) Additionally, the Legislature must enact, again by appropriate legislation, an administrative body to determine any dispute arising under such legislation, and to provide for the settlement of any dispute arising under such legislation. The Legislature "may combine in one statute" all the provisions that define this system of workers' compensation. (*Ibid.*) Thus, article XIV, section 4 specifically authorizes the Legislature to pass legislation that secures safety in places of employment.

From this constitutional grant of authority, the Legislature has enacted workers' compensation laws (Lab. Code, § 3200 et seq.) and occupational health and safety laws (Lab. Code, § 6300 et seq.), including Labor Code section 142.3, which gives the Standards Board the sole authority to implement safety standards.[4] (Lab. Code, § 142.3, subd. (a)(1).) As the legislative history reveals, article XIV, section 4 ratified the Legislature's plenary power to enact a complete system of workers' compensation and removed all doubts regarding the Legislature's authority to act. (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165] (*Mathews*).)

---

[4] Labor Code section 142.3, subdivision (a)(1) states: "The board shall be the only agency in the state authorized to adopt occupational safety and health standards."

■ Appellants isolate "securing safety in places of employment," as a constitutional right in article XIV, section 4, which is separate and apart from the Legislature's authority to enact the workers' compensation system. Based upon this reading, appellants contend that the Legislature does not have the exclusive constitutional authority to enact safety laws as part of its power to create a workers' compensation system. This argument ignores the language in article XIV, section 4. The constitutional provision directs the Legislature to create a workers' compensation system, and as defined in the Constitution, this includes enacting safety laws. (See *Mathews, supra,* 6 Cal.3d at pp. 733–735 & fn. 11.) Thus, as used in article XIV, section 4, the provision for "securing safety in places of employment" is part of the constitutionally defined system of workers' compensation, which is left to the Legislature to create and enact through appropriate legislation.

Equally unavailing is appellants' argument, which focuses on the clause "binding upon all departments of the State government," in article XIV, section 4 to support their contention that the provision was intended to be enforced without legislation. Appellants contend this clause would be "meaningless surplusage if the [constitutional] provision gave the state complete discretion whether to provide the worker protections that article XIV, section 4 requires." We reject this argument because it misconstrues the language in article XIV, section 4.

■ Article XIV, section 4 grants the Legislature plenary power to "create" and "enforce" a complete system of workers' compensation, which is defined in the Constitution to include specific provisions, including compensation benefits, insurance coverage, safety, payment of compensation, and administration. After describing these provisions, the last clause in that sentence (separated by a semicolon) states: "all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government." (Art. XIV, § 4.) When read in context, "all of which" refers back to the previously defined workers' compensation system, and the phrase "binding upon all departments of the State government" is understood to mean the workers' compensation system applies to the state as an employer. Labor Code section 3300, subdivision (a), part of the Workers' Compensation Act, defines employer as, among others, "[t]he State and every State agency." (See *Brooks v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1522, 1529 [75 Cal.Rptr.3d 277]; see also *Sacramento v. Industrial Acc. Com.* (1925) 74 Cal.App. 386, 394–396 [240 P. 792] [workers' compensation is settled policy of the state and is binding upon all employers of the state government, including municipalities].) This construction does not result in meaningless surplusage.

To the extent that article XIV, section 4 states a public policy, it does not create an affirmative duty on the part of the state. (See *Clausing v. San*

*Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1236–1237 [271 Cal.Rptr. 72].) A public policy statement " ' " 'merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' " ' " (*Id.* at p. 1237.) The right proclaimed in article XIV, section 4 establishes the principles, and the specific means to achieve those principles is left to the Legislature.

Appellants next contend that despite the legislative directive in article XIV, section 4, the constitutional provision is self-executing because the directive is not mandatory, and article XIV, section 4 does not confer a new constitutional right. This contention is based upon a misreading of *Flood v. Riggs, supra,* 80 Cal.App.3d 138 and *People v. Vega-Hernandez* (1986) 179 Cal.App.3d 1084 [225 Cal.Rptr. 209].

*Flood v. Riggs, supra,* 80 Cal.App.3d 138, held that despite a mandatory directive to the Legislature, article II, section 4, of the California Constitution was self-executing. (*Flood v. Riggs, supra,* at pp. 154, 155.) At issue was the constitutional provision, stating " '[t]he Legislature . . . shall provide for the disqualification of electors while . . . imprisoned or on parole for the conviction of a felony.' " (*Id.* at p. 144.) The mandatory directive was "purposeless," because the constitutional provision "adequately set[] forth the rule through which the duty imposed may be enforced." (*Id.* at p. 155.) The constitutional provision described that paroled felons were not entitled to vote and legislation was not necessary to make the provision operative. " 'Although a constitutional provision may be self-executing the Legislature may enact legislation to facilitate the exercise of the powers directly granted by the Constitution. . . .' " (*Id.* at p. 154.)

*People v. Vega-Hernandez, supra,* 179 Cal.App.3d 1084, also focused on the mandatory directive to the Legislature. In *Vega-Hernandez,* the court determined that article I, section 28, former subdivision (b) of the California Constitution, unlike the constitutional provision in *Flood,* was not self-executing. The constitutional provision directed the Legislature to " 'adopt provisions to implement this section during the calendar year following adoption of this section.' " (*People v. Vega-Hernandez, supra,* at p. 1092.) In analyzing this language, the court distinguished *Flood,* discussing the newly conferred right of a crime victim to restitution, but only insofar as the nature and means to enforce the right was not set forth in the constitutional provision. (*Id.* at pp. 1096–1099.) "Because section 28(b) directs the Legislature to adopt implementing legislation, and because that constitutional provision does not so completely define the nature of the right it newly confers nor the means of enforcing that right as to render the directive to the Legislature insignificant, section 28(b) is not a self-executing constitutional provision." (*Id.* at p. 1099.)

■   Unlike appellants, we do not read either *Flood* or *Vega-Hernandez* as stating that in the absence of a mandatory legislative directive, a constitutional provision is self-executing if the provision does not involve a newly conferred right. But, even employing appellants' limitations, article XIV, section 4 overcomes the self-executing presumption. The directive to the Legislature does not use the word "shall," but it is not permissive. Article XIV, section 4 is directed to the Legislature; only the Legislature has constitutional authority to create and enact the workers' compensation system. Likewise, although article XIV, section 4 is not a newly conferred right, the constitutional provision enlarged the scope of the workers' compensation system to " 'give the desired full and complete sanction for safety legislation' " and left it up to the Legislature to make the constitutional provision operative. (*Mathews, supra,* 6 Cal.3d at pp. 733–734, fn. 11.)

Citing *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 [127 Cal.Rptr.2d 482, 58 P.3d 339] in their reply brief, appellants further contend that the self-executing analysis differs depending upon the relief sought. *Katzberg* addressed whether a plaintiff may maintain an action for damages based on a violation of his due process liberty interests under article I, section 7, subdivision (a) of the California Constitution. (*Katzberg v. Regents of University of California, supra,* at p. 303.) The question posed in *Katzberg* was not whether the due process clause was self-executing. The California Supreme Court made the distinction that " 'the argument over damages' " is often incorrectly cast as a question of whether the constitutional provision is self-executing. (29 Cal.4th at p. 307, fn. 4.) After making the distinction that the self-executing analysis focuses on whether a constitutional provision is judicially enforceable, the *Katzberg* court decided the damages question. (*Id.* at p. 317.)

We are not concerned with the damages question for the violation of a constitutional right, and we do not confuse that question with whether article XIV, section 4 is self-executing. It is true that both *Clausing v. San Francisco Unified School Dist., supra,* 221 Cal.App.3d 1224 and *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448 [249 Cal.Rptr. 688], addressed a related *Katzberg* issue, that is, whether the plaintiffs could maintain an action for damages to remedy asserted violations of the "right to safe schools" provision in article I, section 28, former subdivision (c) (now art. I, § 28, subd. (f)(1)) of the California Constitution.[5] (See *Clausing v. San Francisco Unified School Dist., supra,* at pp. 1237–1238; *Leger v. Stockton Unified School Dist., supra,* at pp. 1455–1456.) But, *Clausing* also addressed the question of whether the constitutional provision imposed an "express affirmative duty on any government agency to guarantee the safety of

---

[5] In 2008, article I, section 28 of the California Constitution was amended and subdivision (c) was renumbered as subdivision (f)(1).

schools." (*Clausing v. San Francisco Unified School Dist., supra,* at pp. 1236–1238 & fn. 6.) *Clausing* reached the same conclusion we do, namely that the right to safe schools, just like the right to securing safety in employment, required legislative action to make the constitutional provision operative as a judicially enforceable right.

### b.   *Article XIV, Section 4 States Broad Principles, Not Enforceable Rules*

■   As noted, a constitutional provision is self-executing if it supplies a " ' "sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced. . . ." ' " (*Flood v. Riggs, supra,* 80 Cal.App.3d at p. 154.) We find no such rule in article XIV, section 4, pertaining to securing safety in places of employment.

We read article XIV, section 4 as defining the necessary provisions for a complete workers' compensation system, and leaving it up to the Legislature to enact laws to give effect to each provision, including "securing safety in . . . employment." (See *Facundo-Guerrero v. Workers' Comp. Appeals Bd.* (2008) 163 Cal.App.4th 640, 651 [77 Cal.Rptr.3d 731] [Legislature may limit employees' chiropractic treatments]; *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd., supra,* 131 Cal.App.4th at p. 526 [Legislature may limit employees' statutory right to benefits]; see also *Six Flags, Inc. v. Workers' Comp. Appeals Bd.* (2006) 145 Cal.App.4th 91, 95–96 [51 Cal.Rptr.3d 377] [Legislature may not expand its constitutional authority to provide death benefits to deceased worker's estate].) The Legislature must act to fulfill its constitutional mandate to create the workers' compensation system, and the judicially enforceable rights are the laws it enacts.

We reject appellants' contention that article XIV, section 4 contains "line after line," establishing enforceable rules. Article XIV, section 4 defines the workers' compensation system, and leaves it to the Legislature to enact appropriate legislation. If appellants are right, there would be no need for the Labor Code provisions (Lab. Code, §§ 3200–6208, 6300–6719), and the safety standards in title 8 of the California Code of Regulations. Moreover, in the "line after line" of enforceable rules of article XIV, section 4, there is no reference to any specific heat-illness-prevention laws or any other occupational safety and health laws.

We find appellants' attempt to distinguish *Clausing v. San Francisco Unified School Dist., supra,* 221 Cal.App.3d 1224, inapposite. *Clausing* held the "inalienable right to attend [school] campuses which are safe, secure and peaceful," in article I, section 28, former subdivision (c) (now art. I, § 28, subd. (f)(1)) of the California Constitution was not self-executing because it

did not establish a sufficient rule to establish the extent of the right and liabilities. (See *Clausing v. San Francisco Unified School Dist., supra,* at pp. 1237–1238.) We see no distinction. Both the right to safe schools and the right to securing safety in places of employment do not state enforceable rules.

Appellants next contend courts are capable of enforcing broad rights such as "securing safety in places of employment," as courts are frequently asked to enforce statutes and regulations with broad terms such as "reasonable accommodations," "adequate information," and "sufficient period of time." Unlike article XIV, section 4, directing the Legislature to enact safety laws as part of a workers' compensation system, the phrases appellants cite are legislative actions that required the court's interpretation to determine legislative intent. (See *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328] [challenge to five regulations on various statutory and constitutional grounds]; *Alford v. County of San Diego* (2007) 151 Cal.App.4th 16, 20, 32–36 [59 Cal.Rptr.3d 596] [challenge to the county standards that were inconsistent with the enabling statute]; *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 362 [118 Cal.Rptr.2d 443] [determination of employer's duty to provide reasonable accommodations]; *Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 750 [106 Cal.Rptr.2d 332] [determination that consumer advocates' notices for purposes of civil enforcement of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.) were inadequate].) If the Legislature passes a safety law under its constitutional authority to create and enact a workers' compensation system, the court's role is to interpret the legislation consistent with the legislative intent. But, that is not this case.

■ The broad language in article XIV, section 4 gives the Legislature the constitutional authority to create a complete system of workers' compensation, which includes enacting appropriate legislation to secure safety in places of employment. We use an analogy cited in *People v. Vega-Hernandez, supra,* 179 Cal.App.3d 1084, to illustrate the point: Article XIV, section 4 is a " 'naked right [and] without the interposition of the legislature [it] is like the earth before the creation, "without form and void," or to put it in the usual form, the constitution in this respect is not self-executing.' [Citations.]" (*People v. Vega-Hernandez, supra,* at pp. 1095–1096, quoting *Spinney v. Griffith* (1893) 98 Cal. 149, 151–152 [32 P. 974].)

c. *The Legislative History Confirms Legislative Action Is Necessary to Implement the Broad Rights Described in Article XIV, Section 4*

Although we need not resort to extrinsic aids, our conclusion that article XIV, section 4 is not self-executing is bolstered by the legislative history. *Mathews, supra,* 6 Cal.3d 719 presents an extensive history of the evolution of the workers' compensation laws. (*Id.* at pp. 728–736.) Appellants read this legislative history as supporting their position that a constitutional provision is self-executing unless it confers a new right. This is so, according to appellants, because *Mathews* referred to article XIV, section 4 as removing "all doubts as to the constitutionality of the then existing workmen's compensation statutes." (*Mathews, supra,* at pp. 734–735.) We disagree with appellants' conclusion.

To understand the *Mathews* court's statement, we briefly review that court's summary of the legislative history of what is now article XIV, section 4. As *Mathews* explains, in 1911, the Legislature adopted a voluntary system of what was then known as workmen's compensation. (*Mathews, supra,* 6 Cal.3d at p. 729.) The legislation was commonly referred to as the Roseberry Act. One month after the Roseberry Act became effective, section 21 of article XX[6] was approved by the voters and added to the California Constitution. (*Mathews, supra,* at p. 730.) Two years later, exercising its constitutional authority, the Legislature passed the Boynton Act, which changed workers' compensation from a voluntary to a compulsory system and gave the Industrial Accident Commission the authority to prescribe safety regulations.[7] (6 Cal.3d at p. 730.)

In 1917, the Legislature, exercising its constitutional authority, revised the existing workers' compensation laws. (*Mathews, supra,* 6 Cal.3d at pp. 731–732.) "The same month that the 1917 act was approved, the Legislature . . . recommended to the voters an amendment of section 21 of article XX [(now art. XIV, § 4)] . . . [that] was intended to remove all doubts as to the constitutionality of then existing workmen's compensation laws." (*Id.*

---

[6] Section 21 of article XX "was the original constitutional enabling provision establishing the workers' compensation system." (*Six Flags, Inc. v. Workers' Comp. Appeals Bd., supra,* 145 Cal.App.4th at p. 93, fn. 2.)

[7] In 1945, the Industrial Accident Commission's broad authority to regulate safety in places of employment was transferred to the Industrial Safety Board. (*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 766 [187 Cal.Rptr. 387, 654 P.2d 157].) "In 1973, as part of a comprehensive revision of California's occupational health and safety statutes in response to the Federal Occupational Safety and Health Act of 1970, the Industrial Safety Board was reconstituted as the Occupational Safety and Health Standards Board, and the division of Occupational Safety and Health was designated as the administering entity. . . ." (*Ibid.*)

at p. 733, fn. omitted.) As stated in the official arguments regarding the amendment, the workers' compensation plan embraced four principles, including safety provisions, that were added to the 1917 act. (*Mathews*, at p. 733, fn. 11.) The proposed constitutional amendment " 'enlarge[d] the scope of the previous amendment to the constitution, which furnished the authority for our present workmen's compensation act. In addition to compensation of workmen for injuries received, any complete scheme should provide for authority to require the use of safety devices . . . . The amendment of 1911, while providing for compensation, did not give the desired full and complete sanction for safety legislation . . . .' " (*Id.* at pp. 733–734, fn. 11.) Moreover, the proposed amendment was " *'designed to express full authority for legislation; to sanction, establish and protect the full plan in all essentials where the courts have not already passed upon it.' "* (*Id.* at p. 733, fn. 11.) These ballot arguments submitted to the voters are proper extrinsic evidence of voters' intent. (*Flood v. Riggs, supra,* 80 Cal.App.3d at p. 153, fn. 18.)

Based upon this review of the legislative history, the constitutional amendment intended to remove all doubts as to the constitutionality of the Legislature's authority to enact a workers' compensation system. It further clarified and expanded the scope of the Legislature's constitutional authority to enact safety legislation as part of a complete system of workers' compensation. (*Mathews, supra,* 6 Cal.3d at pp. 733–735 & fn. 11; see also *City and County of San Francisco v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 113–115 [148 Cal.Rptr. 626, 583 P.2d 151].) The *Mathews* court's reference to then existing workers' compensation laws confirmed that existing laws were not subject to a constitutional attack for lack of implementing authority. (*Mathews, supra,* at p. 733, fn. 11 [" 'This amendment is a necessary amplification and definition of the constitutional authority vested in the legislature by the amendment to the Constitution adopted October 10, 1911, to enable the enactment of a complete plan of workmen's compensation, which amendment failed to express sanction for the requisite scope of the enactment to make a complete and workable plan.' "].)

■ There is no indication in the legislative history that the voters intended to limit or restrict the Legislature's plenary power after ratifying the constitutional amendment. There also is no indication that the voters intended that individuals could sue the state if they were unhappy with the Legislature's workers' compensation system. Rather, the theme of the initiative was to ratify the exercise of the Legislature's existing implementing authority and to expand the scope of its implementing authority to include enacting safety legislation. The legislative history confirms that article XIV, section 4 is directed to the Legislature, and the Legislature has implementing authority to enact appropriate legislation to "secur[e] safety in places of employment." Thus, based upon this history, and the plain and unambiguous language in the

California Constitution, article XIV, section 4 is not self-executing. The trial court properly dismissed the complaint.

## 2. *The Relief Sought Intrudes on the Coequal Branches of Government and Violates the Separation of Powers Doctrine*

Appellants alternatively contend the trial court erred in concluding that the relief sought violated the separation of powers doctrine. As noted, appellants brought this action because their efforts before the Standards Board to change the heat-illness-prevention regulation were "futile." The manner in which occupational safety and health standards are amended is within the province of the legislative and executive branches of government.

Citing numerous cases, appellants contend it is the appropriate role of the court to review the constitutionality of statutes and regulations. (See, e.g., *Six Flags, Inc. v. Workers' Comp. Appeals Bd., supra,* 145 Cal.App.4th at pp. 95–96, 105–108 [statute authorizing payment of death benefits to deceased employee's estate was unconstitutional under art. XIV, § 4]; see also *Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 391–392 [211 Cal.Rptr. 758, 696 P.2d 150] [administrative acts not authorized by the Legislature are void]; *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176–178 [167 Cal.Rptr. 854, 616 P.2d 836] [civil conservatorship procedures violated due process and equal protection clauses of the Cal. Const.].) We agree with that proposition. Appellants, however, do not ask this court to determine if the heat-illness-prevention regulation is consistent with the constitutional authority conferred to the Legislature, or to determine that the statute authorizing the Standards Board to promulgate regulations is constitutional. Rather, appellants ask this court to intrude on the legislative and executive branches by declaring that they need to improve the heat-illness-prevention regulation.

This state's separation of powers clause provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) The separation of powers doctrine " 'places limits upon the actions of each branch with respect to the other branches. The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function. . . .' " (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 25 [30 Cal.Rptr.3d 30, 113 P.3d 1062].)

In this action, appellants ask this court to declare that the current heat-illness-prevention regulation is inadequate and to order the state through

its state agencies (DIR and Standards Board) to provide more protection to farmworkers to prevent heat-related illnesses. The complaint points out the deficiencies in the current regulation that must be cured by the appropriate agency based upon a court order to draft and enforce additional safety measures. Declaratory relief, however, does not confer upon the court the authority to make pronouncements in a field reserved to other branches of government. (See *Zetterberg v. State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 664 [118 Cal.Rptr. 100].) As the state notes, appellants represent only one of many stakeholders working in outdoor employment, and their complaint is not of wrongdoing, but of disapproval with the current heat-illness-prevention regulation. To grant declaratory relief, the controversy must be the type that the resulting judgment decrees, not suggests what the parties may or may not do. (*Id.* at p. 661.) We do not evaluate the wisdom of the policies of coequal branches of government. The appropriate corrective mechanism is through the political process or legislative clarification.

Appellants cite *California Lab. Federation v. Occupational Safety & Health Stds. Bd.* (1990) 221 Cal.App.3d 1547 [271 Cal.Rptr. 310], and *Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747 [268 Cal.Rptr. 476], to support their contention that courts "routinely review the sufficiency of agency regulations and, when necessary, order the agency to adopt new regulations." Neither case required the court to determine if an existing regulation promulgated by an administrative agency was adequate, and if not, to direct the agency to implement further regulations. *Henning v. Division of Occupational Saf. & Health* concluded that part of an asbestos-related work regulation promulgated by the Division of Occupational Safety and Health conflicted with the governing statute and was void. (*Henning v. Division of Occupational Saf. & Health, supra*, at pp. 760–763.) In *California Lab. Federation v. Occupational Safety & Health Stds. Bd.*, no standard existed and the court concluded that the Standards Board had a ministerial duty to create one. The court, however, stated: "The Board may exercise its discretion in fashioning such standards and is not required to simply adopt" the federal standards. (*California Lab. Federation v. Occupational Safety & Health Stds. Bd., supra*, at pp. 1556–1559.)[8] Thus, neither case holds that declaratory relief is a remedy to force an agency to adopt a different or particular standard.

---

[8] Amici curiae also cite *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303 [118 Cal.Rptr. 473, 530 P.2d 161], and *Fernandez v. California Dept. of Pesticide Regulation* (2008) 164 Cal.App.4th 1214 [80 Cal.Rptr.3d 418], which are inapposite. *Carmona* challenged the administrative agency's interpretation of an existing regulation. (13 Cal.3d at pp. 305–306, 310–314.) *Fernandez* addressed whether the challenged regulation was developed in compliance with the statutorily mandated duty. (164 Cal.App.4th at pp. 1220, 1228–1236.) Here, we are asked to "declare" that the heat-illness-prevention regulation is not adequate.

In contrast to these cases, appellants are trying to "alter the course of government merely because [they perceive] it differently from the agency entrusted with the particular set of tasks embraced in a statute." (*Zetterberg v. State Dept. of Public Health, supra*, 43 Cal.App.3d at p. 664.) In *Zetterberg*, a group of taxpayers sued the Department of Public Health seeking a declaration that the Mulford-Carrell Air Resources Act (Health & Saf. Code, § 39000 et seq.), which created the State Air Resources Board as the primary regulator of air pollution, did not divest the department of its regulatory authority. In affirming the summary judgment, the court held declaratory relief was inappropriate because the action sought general declarations of the legislative allocation of statutory powers and duties among the executive branch. (*Zetterberg v. State Dept. of Public Health, supra*, at pp. 661–663.) The court reasoned it "would violate the doctrine of separation of powers if the courts in such a situation, under the guise of declaratory relief, made pronouncements in a field reserved to legislative or executive discretion." (*Id.* at p. 663.) Thus, the *Zetterberg* plaintiffs' difference of opinion as to the interpretation of a statute did not present a justiciable controversy. (*Id.* at pp. 663–664.)

Like *Zetterberg*, the separation of powers doctrine is implicated here, and appellants do not persuade us otherwise. While the prayer for declaratory relief differs from *Zetterberg*, appellants seek the court's intervention to direct the state, through the DIR and the Standards Board, to enact safety measures that offer greater protection to farmworkers than the protections offered to all outdoor workers in the current regulations. We are not expressly asked to rewrite the current heat-illness-prevention regulation, but this request, unlike *California Lab. Federation v. Occupational Safety & Health Stds. Bd.*, necessarily requires the court to determine in the first instance that the current heat-illness-prevention regulation is not adequate. We cannot formulate a decree that addresses the wisdom of the policies embodied in the existing regulation simply because appellants perceive the solution to preventing heat illnesses among farmworkers differently from the Standards Board, the agency entrusted by the Legislature to adopt safety standards.

Amici curiae present anecdotal evidence of heat-related illnesses and the risk to California farmworkers, which was not part of the record before the trial court. We applaud the efforts to raise awareness of a potentially life-threatening situation that affects California farmworkers and all outdoor employees working in extreme heat, but this advocacy is better directed to the Legislature to act, or to the Standards Board, the administrative body the Legislature has entrusted to promulgate safety regulations. Appellants' frustration before the Standards Board is not a basis for this court to take over for the legislative and executive branches. Thus, the complaint was properly dismissed on these alternative grounds.

## DISPOSITION

The judgment of dismissal is affirmed. The parties are to bear their own costs on appeal.

Klein, P. J., and Croskey, J., concurred.